PATTON-WORSHAM DRUG COMPANY v. A. C. DRENNON.

No. 2116.    Decided January 25, 1911.

**Pleading—Negligence—Frightening Horse.**

Mere allegation that defendant drove "a team of horses decorated with cloths upon which were various letters in bright colors," upon the public street without further statement of the attending circumstances other than that it was calculated to alarm horses and that this defendant knew or should have known, did not show an act wrongful in itself, nor a negligent one, in the absence of allegation that the act was one of negligence or done in a negligent manner. Such pleading was insufficient to support a recovery of damages by one injured by fright of a horse at defendant's team so equipped. (Pp. 62-66.)

Error to the Court of Civil Appeals, Fourth District, on error from Bexar County.

Drennon sued the Drug Co. and recovered. Defendant appealed, and obtained writ of error on affirmance of the judgment.

*Geo. B. Taliaferro, H. E. Jackson* and *Etheridge & McCormick,* for plaintiff in error.—In the absence of statutory inhibition, the mere appearance of a caparisoned team upon the streets of a city does not in law constitute negligence, although some horses may take fright thereat, and a petition which seeks a recovery of damages for personal injuries, based solely upon an averment that such injuries were caused by the appearance upon the streets of a city of a caparisoned team, "calculated to frighten horses driven by persons upon such streets," presents no cause of action and is vulnerable to general demurrer. Piollet v. Simmers, 106 Pa. St., 106; Stone v. Longworthy, 40 Atl. Rep. (R. I.), 833; Bailey v. Troy & Boston Ry. Co., 57 Vt., 252; Macomber v. Nichols, 34 Mich., 212; Overton v. Freeman, 11 C. B., 867; Carter v. Berlin Mills, 58 N. H., 52; Wabash Ry. Co. v. Farver, 12 N. E. (Ind.), 296.

*C. L. McGill* and *C. L. Bass,* for defendant in error, cited: 1 Street's Foundations of Legal Liability, 67, 72, 86, 87, 97, 103, 104; Watson, Personal Injury, secs. 145, 150, 151, 154; Shearman and Red., Negligence, sec. 21; 21 Am. & Eng. Enc. Law, 487; Bigelow on Torts, sec. 100; Wharton on Negligence, sec. 78; Pollock on Torts (7th ed.), 429-431; 4 Sutherland on Damages, sec. 1244; Brown v. Railway Co., 54 Wis., 342.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant in error instituted this suit in the District Court of Bexar County to recover damages for injuries sustained by his wife, alleged to have been occasioned by the negligence of one J. R. Lowry, who was averred to be an agent of the Patton-Worsham Drug Company. On a trial had on the 20th day of October, 1908, he recovered judgment against the Patton-Worsham Drug Company for the sum of $1,000, which judgment on appeal was affirmed by the Court of Civil Appeals.

The case involved a number of questions, among others, the liability

of the Drug Company, whose agency in the matter is denied, and complaint is also made with reference to certain charges in the court below.

We have concluded that the petition filed in the case and on which the suit was tried, does not state a cause of action, and we will not consider or discuss any other question than this. The petition, after alleging the residence of the parties and the agency of Lowry, contains, as grounds of negligence, the following averments:

"Second. (a) That heretofore, on or about the 13th day of March, 1906, plaintiff's wife was driving a horse to a buggy along a street over which many horses were driven in the city of San Antonio, Bexar County, Texas, and the horse came within view of a team of horses which said Lowry was driving to a wagon. (b) That the team of horses were decorated with cloths upon which were various letters in bright colors, and such team of horses so decorated were well calculated to frighten horses driven by persons upon such streets, and which was known and ought to have been known by said Lowry in the exercise of ordinary care, and the team so decorated caused the horse to be frightened and to upset the buggy and plaintiff's wife was thrown to the earth and thereby received injuries." . . .

"Fifth. That said Lowry knew and ought to have known the facts set out in subparagraph (a) of paragraph SECOND; and by reason of same foresaw and ought to have foreseen that there was a possibility of loss being caused to some one driving such a team on such a street; and by reason of such foresight he ought not to have done so, which he knew and ought to have known.

"Sixth. That said conduct of said Lowry was the natural and proximate cause of said losses to plaintiff."

These were all the allegations of negligence. It will be observed, therefore, that in effect the averments are, that the team of horses, decorated with cloths upon which were various letters in bright colors, were calculated to frighten horses driven by persons upon the streets, and that this was known or ought to have been known to Lowry in the exercise of ordinary care, and that having knowledge of these facts he ought to have foreseen that there was a possibility of loss being caused by some one driving such a team on such street, and that the conduct of Lowry was the natural and proximate cause of the loss and damage to defendant in error. It is not averred that the cloths on the wagon were improperly fastened, or not fastened at all; nor is it averred that same were permitted to become loose and flutter in the wind. There is no allegation of reckless speed or other acts of negligence in the fact of driving such team. The width of the street is not given nor any of the facts stated attending, or which caused, the injury. There is no allegation that the horse driven by the wife of the defendant in error was a gentle horse, or that the team was calculated to frighten horses of ordinary gentleness, or in fact had ever frightened any such horses. It is not averred that the act of the agent of the plaintiff in error in driving such a caparisoned team with such a vehicle was in violation of any city ordinance, or of any statute of the State, nor is it in terms averred that what was done constituted, within itself, negligence, so that, unless we are prepared to hold that in the mere fact of driving "a team of horses which were decorated

with cloths upon which were various letter in bright colors," there was negligence and that knowledge of the fact of driving such a team might or would cause other horses to become frightened and run away, there would seem to be no other ground upon which these facts, of themselves, would constitute actionable negligence. Almost this identical question was discussed by Judge Cooley, Chief Justice of the Supreme Court of Michigan, in the well considered case of Macomber v. Nichols, 34 Mich., 212, 22 Am., 522. That was an action on the case brought by Nichols for an injury occasioned by his horse taking fright as he was driving along the public highway, caused by an engine mounted on wheels which Macomber was moving on the same highway. Among other instructions given by the court in that case were the following:

"2. The right to travel in a public highway is a .right which is common to all, and no person has the right to impede or render dangerous the travel of the highway by any other person.

"3. A party placing upon the highway any vehicle unusual, and calculated from its appearance and mode of locomotion to frighten horses of ordinary gentleness, is liable for all damages resulting therefrom.

"4. It is no defense to this suit that the defendant was using the steam engine in the transaction of his lawful and legitimate business, if his use of the highway in such business rendered the highway dangerous for others to travel.

"5. The defendant had no right to run his steam engine on the public street or highway if such engine was calculated to frighten horses of ordinary gentleness."

It will be noted that the contention made in that case and the issue upon which the recovery was permitted was, in substance, to the effect that Macomber had no right to run his engine on the public street or highway if same was calculated to frighten horses of ordinary gentleness. Treating this question Judge Cooley, speaking for the court, says:

"But the instruction that any one placing upon the highway a vehicle unusual, and calculated from its appearance and mode of locomotion to frighten horses of ordinary gentleness, is liable for all damages resulting therefrom, is not only erroneous, but it could not fail to mislead. It was an instruction, in substance, that the placing of such a vehicle in the highway is always, and under all circumstances, an illegal act; a wrong in itself, for which an action will lie on behalf of any one who may chance to be injured in consequence.

"Injury alone will never support an action on the case; there must be a concurrence of injury and wrong. If a man does an act that is not unlawful in itself he can not be held responsible for any resulting injury unless he does it at a time or in a manner or under circumstances which render him chargeable with a want of proper regard for the rights of others. In such a case the negligence imputable to him constitutes the wrong, and he is accountable to persons injured, not because damage has resulted from his doing the act, but because its being done negligently or without due care has resulted in injury. If the act was not wrongful in itself, the wrong must necessarily be sought for in the time or manner or circumstances under which it was

performed, and injury does not prove the wrong, but only makes out the case for redress after the wrong is established.

"Persons making use of horses as the means of travel or traffic by the highways have no rights therein superior to those who make use of the ways in other modes. It is true that locomotion upon the public roads has hitherto been chiefly by means of horses and similar animals, but persons using them have no prescriptive rights, and are entitled only to the same reasonable use of the ways which they must accord to all others. Improved methods of locomotion are perfectly admissible if any shall be discovered, and they can not be excluded from the existing public roads, provided their use is consistent with the present methods.

"A highway is a public way for the use of the public in general for passage and traffic, without distinction. Starr v. C. & A. Railroad Co., 4 Zab., 24 N. J. L., 597. The restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to when they are only such as are incident to a reasonable use under impartial regulations. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods; and it can not be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them; and if the law should preclude the adaptation of the use to the new methods, it would defeat, in greater or less degree, the purpose for which highways are established."

This view is supported by many other authorities: Stone v. Longworthy, 20 R. I., 602, 40 Atl., 833; Carter v. Berlin Mills, 58 N. H., 52; Wabash v. Farver, 111 Ind., 195, 12 N. E., 296; Elliott on Roads & Streets, 925.

We think also that the principle announced in the case of Texas & Pacific Railway Co. v. Bigham, 90 Texas, 225, distinctly applies. It is there stated: "But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." See also Light & Power Co. v. Lefevre, 93 Texas, 604, 49 L. R. A., 771.

We do not think that it should be held that the mere allegation that one drove "a team of horses decorated with cloths upon which were various letters in bright colors," without further statement, of any of the attending circumstances, would state a cause of action when accompanied with no other allegation than that the team so decorated was calculated to frighten horses driven by persons upon such streets and that in the exercise of ordinary care this danger should have been

apprehended by the person driving such team. It is said in Elliott on Roads & Streets, paragraph 851, that "travelers are not confined to the use of horses and ordinary carriages upon highways. It is a matter of considerable difficulty to determine to just what extent they may avail themselves of new means of locomotion." The rule seems to be that, when new means of locomotion come into general use among travelers upon highways which are not dangerous when properly managed and which do not interfere with the proper use of the highway in other modes, this can not be deemed unlawful in itself. The author recognizes the fact, however, and we have no doubt of the correctness of the view, that in exceptional cases where the right of transportation exists over highways, effective means must be taken to prevent injury. What such means must be, or should be, in a given case, would naturally depend, to a large extent, upon the facts and circumstances surrounding the parties. These facts and circumstances we think should be averred with such definiteness and precision as reasonably to show the acts of negligence complained of.

For the error pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*