### CITY OF AUSTIN v. SCHLEGEL.
### (No. 424–3635.)

(Commission of Appeals of Texas, Section "B". Jan. 9, 1924.)

**1. Pleading ⊙⟹34(7)—Every reasonable intendment indulged in favor of pleading upon general demurrer.**

District and county court rule 17, requiring that in passing upon a general demurrer every reasonable intendment arising from the pleading excepted to shall be indulged in favor of its sufficiency, will be followed by the appellate courts.

**2. Municipal corporations ⊙⟹747(3)—Not liable for acts of driver of fire truck.**

A municipal corporation is not liable for acts of driver of fire truck, even if an employee thereof.

**3. Municipal corporations ⊙⟹816(6)—Petition held not to allege negligence of fire wagon driver.**

Petition against city for injuries sustained in a fall from a fire hose wagon *held* not to allege negligence of driver of wagon as a concurring cause of injury, but only to allege that the city was negligent in leaving a hole in the street.

**4. Evidence ⊙⟹83(2)—Presumption held not to arise that fire department had ceased to be voluntary.**

In an action against the city of Austin for injuries to invitee falling from fire hose wagon, when it ran into a hole in the street, it could not be presumed, under Sp. Laws 1909, c. 2, art. 14, § 15, and article 2, §§ 2, 9, that the fire department had been changed from a voluntary to a municipal department.

**5. Municipal corporations ⊙⟹801(1)—Liable for defective streets to invitee on fire wagon.**

A city is liable for injuries to an invitee on a fire hose wagon, caused by the city's negligence in repairing its streets; streets being intended for rapid driving in case of fire.

**6. Municipal corporations ⊙⟹819(4)—Finding defect in street caused injury sustained.**

In an action for injuries to invitee on fire wagon from which he was thrown, evidence *held* to sustain finding that certain hole in street was the cause of the injury.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by Max B. Schlegel against the City of Austin. From a judgment of the Court' of Civil Appeals (228 S. W. 291), affirming a judgment for plaintiff, defendant brings error. Affirmed.

J. Bouldin Rector, City Atty., of Austin, for plaintiff in error.

George Mendell, Jr., and O. Dickens, both of Austin, for defendant in error.

STAYTON, J. Max B. Schlegel, in this case, sued the city of Austin for damages growing out of personal injuries sustained by him in a fall from a fire hose wagon, alleging that the fall was occasioned by a jolt of the wagon as it ran over a hole in the street upon which it was proceeding to a fire. The general demurrer of the city to his petition was overruled by the trial court, as were the grounds of his motion for new trial to the effect that there was no evidence that the defect in the street was the cause of the injuries. Both actions of the trial court were sustained by the Court of Civil Appeals (228 S. W. 291), whose rulings in that respect constitute the grounds of the application for writ of error.

[1] The city urges in the application that the general demurrer should have been sustained, (1) because the allegations of the petition showed that the driver of the wagon caused the injury, whereas the city was not responsible for his acts; (2) because, in any event, the negligence of the driver concurred with that of the city as to the street, and, as it could not be determined which cause contributed more largely to the injury, or that, without the concurrence of both, the injury would have resulted, no liability was shown; (3) because Schlegel was either a trespasser or a mere licensee upon the wagon; and (4) because the use of the street by a rapidly moving fire wagon was an unusual use, for which the duty of the city with respect to its streets did not arise. In considering the force of these points, rule 17 for the district and county courts will be followed. It requires that in passing upon a general demurrer every reasonable intendment arising upon the pleading excepted to shall be indulged in favor of its sufficiency.

[2, 3] It appears to be well settled that for the acts of the driver of a fire truck, a municipal corporation is not liable. If the driver is not an employee of the municipality, this conclusion follows necessarily. If he is an employee, the fact that he is engaged in

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

service for the public under an exercise of the police power has been held to absolve the corporation of responsibility. But it is considered that the pleading under investigation does not allege that the acts of the driver of the wagon were either the sole or the concurring cause of the injuries, but that it does allege as the cause, the hole in the street. Excepting formal introduction and conclusion, the petition is fully quoted in the opinion of the Court of Civil Appeals. The only allegations indicated by the city, and all that seem to admit its contention, occur in the fifth paragraph of this petition, where, after averring the approach of the wagon, its being slowed down or stopped to allow plaintiff Schlegel to board it, his having boarded it, the circumstance that "the speed of said horses and wagon was increased," and the fact of the collision with the hole in the street, and the consequent sudden jar which threw plaintiff's feet off the running board and left him dangling by an iron railing to which he was clutching, the pleading continues to the effect that he used every effort in his power to regain his footing, but that, some 100 feet farther on, "with the running horses and the constant sounding of the rotary gong on the hose wagon, making a loud noise, plaintiff tried to throw his body away from the wagon as he could not hold on any longer," that "in doing so he fell to the ground," and that his injuries ensued. It would not be reasonable to consider that the allegation of an increase of speed, after its slackening or a stop, would be one intended to charge negligence, because it is proper for a vehicle of that kind to get to a fire with the greatest speed practicable. The statements as to the sounding of the gong and the running of the horses are only occurrences incident to the speed. In this particular case they would seem to be designed by the pleader to show, as well, a reason why the plaintiff was not contributorily negligent in throwing himself from the wagon before shouting to the driver to stop; the inference being that no shout of his could have been heard by the driver on account of the noise. In addition to the allegations already noticed, the petition proceeds to state that, if the plaintiff did not obtain a foothold, at least the accident occurred while he was trying to get a foothold, and, in connection with this, the statement of the cause of the accident is again made. In the latter averment no mention is made of any act of the driver. This indicates that the former allegation in that respect was not intended to be important. Moreover, in paragraph 7 of the petition, which alone assigns "negligence" in terms, the element charged is not an act or omission of the driver but the hole in the street. There does not seem to be room for holding, either from a cursory or a careful reading of the petition, that the acts of the driver to any extent—whether solely or partially—are alleged to have been a proximate cause of the accident. This disposes of the first contention, and it also, perforce, disposes of the second, without the necessity of a discussion of the rule of law in this state applicable to negligence of one tort-feasor when concurring with other efficient acts or negligence.

[4] The defendant's third point is that the petition properly construed, shows that the hose wagon was its property and the driver its employee, unauthorized to invite outsiders to ride on the wagon; and that therefore plaintiff, at the time alleged, was either a trespasser or at best a licensee, towards whom no duty was owed save that of the avoidance of intentional injury. It concedes, as is true, that the allegations are not to that effect, but states that a proper presumption from the provisions of the special act incorporating the city, which is expressly designated a "general act," would show that the wagon was the property of the city and the driver in its employ.

The charter will be found in Sp. Laws Reg. Sess. 1909, pp. 8–45. Section 15, art. 14, gives the city council "power by ordinance * * * to provide for the prevention and extinguishment of fires, and to organize and establish fire companies." Section 9, art. 2, makes it the duty of the superintendent of police and public safety to "superintend the purchase of all property and apparatus needed or used by the fire department of the city," and section 2, art. 2, gives to the city council "all executive, legislative and judicial powers and duties" at such time possessed and exercised by the various executive, judicial and administrative officers of the then city "except as to the fire department, which shall remain as now, a volunteer department, until changed by a vote of the people." No presumption should be indulged against the petition, but all presumptions and inferences that are reasonable should be indulged, on this attack, in its favor. One cannot presume, from these relevant provisions of the charter, that at the time of the accident a vote of the people had changed the nature of the fire department from a voluntary to a municipal department, or that the city council had passed an ordinance to that effect or to the effect of providing for a municipal fire department additional to the volunteer department. Neither can there be a presumption that the time for the exercise of the duties of the superintendent had arrived. The only presumption that would seem to apply to the provisions of the charter, in the absence of allegations to the contrary, would be that of the continuation of the state of things there stated as existing, and saved. 10 R. C. L. 872.

The case, then, as alleged, is not one in which, without authority from an employer but through an unauthorized employee, the plaintiff was upon the vehicle, as in Mexi-

can National Ry. Co. v. Crum, 6 Tex. Civ. App. 702, 25 S. W. 1126. It is simply one in which the person "holding the reins" of a hose wagon, while proceeding to a fire, took on an inhabitant of the city to aid in fighting the fire. Even as between him and the plaintiff, the latter was not, under the circumstances, a mere licensee. The exigency of arriving at the scene of the fire speedily made it reasonable that the driver would not have permitted an outsider to mount the wagon if he had not needed his assistance. A stop or slackening of speed in such circumstances would more reasonably be an invitation than a mere permission. It may, moreover, be doubted that, as between the city and plaintiff, under the allegations, the city was in a position to question collaterally what the right of the plaintiff was upon the wagon. In this respect and in the fact that the wagon was proceeding upon a public street instead of a railroad track owned by defendant, the case is distinguished from St. Louis S. W. Ry. Co. v. Spivey, 97 Tex. 143, 76 S. W. 748, and Lovett v. Gulf, C. & S. F. Ry. Co., 97 Tex. 436, 79 S. W. 514. It cannot be said that, as to the only premises alleged to be under the control of the city—that is, the street—Schlegel was either a trespasser or a licensee.

[5] Whether the defendant owed him any care as to the street is a related question, which is raised in its fourth point. It there avers that it owed him no duty because he and the conveyance were not making an ordinary and usual use of the street.

Fire fighting, upon the part of an inhabitant of a city, proceeds, at least partly, from motives of defending the lives and property of others and of defending the inhabitant's own life and property against a spreading or general conflagration. As progress is made from village to modern city life, the municipality, first recognizing and permitting, and later fostering, private fire fighting, and finally assuming this necessary function itself, becomes in most cases primarily the agency of it. But the expression of the natural tendency of the inhabitants can never be entirely foregone; and in time of unusual calamity, when the city forces are not large enough to cope with the situation, aid from volunteers becomes, and always will become, indispensable. The need is always latent, as is the consequent propriety that inhabitants be present at the scene of the fire. Going to fires, then, is not only a customary, but a usual, thing, and one that under proper regulations perhaps should not be discouraged. The instance of a volunteer service and of the sounding of a loud alarm as in this case, under the allegations, emphasizes the point. Fires are frequent and usual in cities; and the only way successfully to quell them is for the fighters, whether regulars or volunteers, to proceed with sufficient men and apparatus, speedily over streets and highways.

The streets must be intended partly for that purpose. Analogies and instances of less importance and clarity are abundant. Patton Worsham Drug Co. v. Drennan, 104 Tex. 62, 133 S. W. 871; Texas & P. Ry. Co. v. Rosedale St. Ry. Co., 64 Tex. 80, 53 Am. Rep. 739; Taylor v. Dunn, 80 Tex. 652, 16 S. W. 732; note 20 L. R. A. (N. S.) 748–754; 13 R. C. L. 374–376. In the case of Taylor v. Dunn, above cited, it is held that the obstruction of a street by a railroad was a rightful use, because consistent with the purpose "for which streets exist" and "necessary." Ruling Case Law and the L. R. A. note, also above cited, are based upon many well-considered authorities, deciding that the duties of a municipal corporation as to its streets are owed a fireman speeding to a fire on a fire truck, even though he be an employee of the city. It seems clear, since the use that was being made in the case at bar was not only necessary and one for which the streets were designed, but was also recognized by the charter and was usual and proper, that the street duties of the city of Austin extended to it.

None of the points made by defendant against the petition appear to be tenable, and no other reason is seen, by inspection of it, that would have justified the sustaining of the general demurrer. This conclusion makes it unnecessary to pass upon the question of whether the plaintiff would have appeared as an invitee on the hose wagon, had it been alleged to be the property and charge of the city, and on the question of whether the petition was aided by an allegation, of mixed law and fact, that the plaintiff, in substance, was "lawfully entitled" to be where he was at the time of the accident, and that the city "owed him the duty" of reasonable care to have the street reasonably safe.

[6] The other points made by the city are to the effect that the verdict of the jury in plaintiff's favor is without evidence to support it. The contentions are that plaintiff got upon the wagon after it had passed the alleged hole in the street, and, hence, that the latter could not have caused the accident, that, had the facts been otherwise, there was no evidence that the hole caused the accident; and that, under the evidence, it was physically impossible, at the time plaintiff lost his footing, for the wagon to have attained a momentum which, from the effects of dropping into the hole, was sufficient to have caused the jolt described by him.

There was evidence of some probative value that the wagon stopped, and that plaintiff boarded it, before a turn was made at the corner of Navasota and Twelfth streets, and that at this corner, and within the intersection of the streets—not only in Navasota street, but also in Navasota "out of Twelfth street"—was a hole about 18 inches in circumference and a foot deep, so situated as to be in front of the wagon when it

started. It was not undisputed, therefore, that the accident occurred after the hole was passed.

The evidence was not very satisfactory upon the question of whether this hole caused the jolt that made plaintiff fall. But there was some evidence. The occurrence was upon a dark night. There was, consequently, no eyewitness. Plaintiff might have been credited with detailing all the direct facts possible to be stated under the circumstances. A person living near the corner testified that the street was in usual condition, except for the hole, and that the latter was in the natural path of vehicles turning the corner. He said: "It was just in the way where the wheel of the wagon would run across it." The defect had evidently been made by vehicles beating a rut into a buried, broken drain pipe. On a previous occasion the driver of the hose wagon had noticed a hole at this point that needed repair. Plaintiff testified that he had never seen this place in the street, but he was himself the owner of a horse-drawn vehicle, was an adult, had frequently been to fires on this and other fire apparatus, and testified that the wagon sustained the jolt that caused his fall "like it had run over a big hole." In numerous instances he declared, both upon direct and cross-examination, that "the" hole in the street was the cause of the jolt. His testimony, it is true, could have been viewed below as a mere guess or surmise, but it also could have been considered as a substantial opinion. If based upon observation and experience, opinions involving occurrences and effects which are of a common nature, and the details of which are naturally and necessarily indefinable, may be given by a nonexpert, and may be viewed as of great or little weight, as the circumstances may justify. Freeman v. Grashal (Tex. Civ. App.) 145 S. W. 695. Taken in connection with the testimony of the driver and of the other witness, and read in the light of all the testimony, the opinion of Schlegel presented some evidence that the accident was caused by the hole at the corner of Navasota and Twelfth streets.

The consideration of whether the wagon could have attained enough momentum to have caused the accident described by plaintiff, within the few feet it had to travel between the stop and the defect, is attended by indefinite factors, involving the weight and shape of the vehicle, the size and strength of the team, the slope of the street, the shape of the hole, the outward force of turning the corner, and many other considerations of like nature, and, in addition, the physical effect of a combination or concurrence of some or all of them. Upon these there is no evidence; and there is no evidence that the accident would not have occurred as plaintiff claimed it did. It cannot be confidently assumed that it was an impossible occurrence, even had one hind wheel of the vehicle been resting in the hole at the time of the stop. It would seem for these reasons that defendant's final contention should be overruled.

We recommend that the judgments of the district court and of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.