Mary Alice Allen MORRIS et vir,
Appellants,

v.

CITY OF HOUSTON, Appellee.

James F. CRUMP et ux., Appellants,

v.

CITY OF HOUSTON, Appellee.

Nos. 465, 466.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 7, 1971.

Rehearing Denied April 28, 1971.

Wm. A. Olson and Joseph G. Rollins, Houston, for appellee.

BARRON, Justice.

The plaintiffs, Mary Alice Allen Morris and Doshia Crump, joined by their respective husbands, brought these suits against the City of Houston for personal injuries. The two suits, having identical facts with the exception of damages alleged, were ordered joined for trial and were appealed together under an agreement that one statement of facts would suffice.

On March 2, 1965, the annual Fat Stock Show Parade was being held in downtown Houston. Mrs. Morris and Mrs. Crump were watching the parade from the front of Star Furniture Company situated at the intersection of Rusk and Milam Streets in Houston. The sidewalk on which they were standing was three feet above the street level, and the ladies were standing somewhat back of the crowd, at least far enough back to have people between them and a rope stretched along the street. The rope had been strung along both sides of the parade route and it was tied to light posts or parking meters, whichever was available. There was no rope strung at street intersections. City of Houston employees had made these preparations the night before. However, when the paraders approached an intersection, City of Houston policemen assigned to those particular blocks would string the rope across such intersections so that as the parade progressed, there was a continuous line of rope on each side of the street separating the spectators from the paraders. There was no other type of divider or barricade used. There is testimony that the rope was strung along the route in order to keep the spectators and the paraders separated; to prevent the spectators from entering the parade route, and not to keep the paraders off the sidewalks. This action is described as one of "crowd control." In addition to the rope there were four police officers at the

John Gano of Jamail & Gano, Houston, for appellants.

intersection of Milam and Rusk Streets, two on each side.

The parade consisted of horse-drawn wagons and mounted men and women, and ahead of them and behind them were a number of school bands. J. W. Carter, a police officer stationed at the Milam and Rusk intersection, noticed that the rider of one of the horses in the parade was having trouble with her mount, which reared up twice, and that the third time the horse reared up it left the rider on the ground. The rider was identified as Mrs. Gladys Veatch, who testified that she purposely released control of the horse under the circumstances.

Carter and another officer, Price, started trying to catch the horse, which had started running counter to the parade route. The horse went over the ropes above mentioned, and after he had changed directions several times, the policemen were finally able to grab hold of him. In spite of this, however, the frightened animal dragged the policemen about twenty feet, and the horse started up the steps, three feet high, onto the sidewalk in front of Star Furniture Company where the horse knocked down and fell on plaintiffs, causing the bodily injuries complained of in these lawsuits.

In an effort to prove negligence on the part of the City, plaintiffs attempted specifically to predicate negligence on the City's failure to erect wooden or horse-proof barricades all along the parade route for approximately 24 blocks, and that at least the City should have put up the movable wooden barricades which it used on occasions, normally to block off construction work. Plaintiffs specifically sought to prove that it was negligence to use only a rope strung out along the route; to prove that the runaway horse amounted to a dangerous condition created by the City or was equivalent of a street defect for which the City was obligated in its proprietary capacity to prevent or control; and appellants attempted to show that the

City failed to have sufficient personnel on duty to prevent parade animals from entering the spectator area. All answers to special issues above were in favor of the City of Houston. The jury also found that the occurrence in question was not the result of an unavoidable accident, and it found that the act of Mrs. Veatch in releasing control of the horse was the sole proximate cause of the accident. Judgment was rendered by the trial court in favor of the City of Houston on the verdict, and the plaintiffs have each appealed.

Appellants complain that the trial court erred in submitting special issue 9-A to the jury (unavoidable accident), in also submitting issue 9-B (sole proximate cause) and basing its judgment upon the jury's findings thereto; that the trial court erred in refusing to permit interrogation and admission of testimony of police officers Herman B. Short, Chief of Police, and J. W. Carter and to permit interrogation and admission of testimony of Jerry L. King, the city's traffic engineer, all in various particulars; and that the trial court erred in refusing to permit appellants to complete their bill of exceptions concerning the testimony of the Chief of Police.

■ We overrule appellants' first complaint concerning the submission to the jury of special issues number 9-A and 9-B. The unavoidable accident issue defined an "unavoidable accident" to be an event not proximately caused by the negligence of any party to it, in compliance with the rule announced in Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379. The jury answered that the occurrence was not the result of an unavoidable accident. Special issue number 9-B inquired whether the act of Mrs. Veatch in releasing control of the horse was not the sole proximate cause of the occurrence in question. The jury answered that such was the sole proximate cause. Specific contention is made that answers to the two special issues above were conflicting and that the issues were duplicitous and

consequently harmful to appellants. The test for irreconcilable conflict is stated in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, as qualified by Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772. See also Siratt v. Worth Construction Company, 154 Tex. 84, 273 S.W.2d 615. The jury found no negligence on the part of the City of Houston. The unavoidable accident issue inquired, in effect, whether the event was *proximately* caused by the *negligence* of any party to the transaction. The "sole proximate cause" issue inquired whether the *act* of Mrs. Veatch in releasing control of the horse was not the sole proximate cause. No finding of the third person's negligence (Mrs. Veatch) is necessary in connection with a sole proximate cause issue, since the third person's conduct, negligent or otherwise, might be the sole proximate cause of appellants' injuries. No conduct of the City could then be a proximate cause, and the appellee City could not be liable under the findings and circumstances of this case. Plemmons v. Gary, 321 S.W. 2d 625, 626 (Tex.Civ.App.), no writ; Gulf, C. & S. F. Ry. Co. v. Jones, 221 S.W.2d 1010, 1014 (Tex.Civ.App.), writ ref., n. r. e.; Ft. Worth & Denver City Ry. Co. v. Bozeman, 135 S.W.2d 275, 281 (Tex. Civ.App.), writ dismd. judgm. cor.; Hodges, Special Issue Submission in Texas, 60 (1959). And see Vol. 1, Texas Pattern Jury Charges, Sec. 3.04, p. 56. The issue of unavoidable accident, inquiring in effect whether the City or Mrs. Veatch was *negligent*, is an entirely different inquiry from the sole proximate cause issue which inquired simply whether the *action* of Mrs. Veatch in turning her horse loose was the sole proximate cause of the occurrence in question. See also Gobel v. City of Houston, 455 S.W.2d 776, 779 (Tex.Civ.App.), writ ref., n. r. e., and cases cited. We see no conflict or other error in the court's charge.

Appellants contend further that the trial court excluded from the jury, over objection by the City, important and controlling testimony sought to be elicited from the witnesses Carter, Short and King. The excluded testimony generally dealt with the duty of the City to use temporary wooden barricades along the parade route on the occasion in question. It was contended by appellants that the rope barricade was wholly insufficient and inadequate under the circumstances.

After Chief Short had testified generally, he testified on bill of exceptions that the temporary wooden barricades which the City used on occasion for closing off streets was a permanent indication that the street is blocked off; that they are not such type of obstruction which would prevent a person from walking or an automobile from being driven or traffic from moving over it, and for the most part such barricades are an indication or warning that an area is blocked. Short had earlier described the barricades by saying that they "look like a long section of saw-horse. It would not be high enough to be described as fence barricades." The Chief did not recall having seen any three-board barricades of a temporary nature owned by the City, and that the barricades which the City Public Works Department owns and which were used to block off an area were safety devices in that they indicated that an area was blocked off, but that they did not forcibly impede anything. They constituted a physical barrier only in the sense that it was hoped that people "would not pass by them, or move them, or drive past them." He said that such barricades were not the type used to pen animals and were approximately 36 inches high (which was the height of the sidewalk on which appellants were standing at the time of the accident). Short, an experienced horseman, had regularly ridden in Fat Stock Show Parades including the one here involved. He testified that he had never seen any of the horses rear up, bolt, or run during the parades.

Police Officer J. W. Carter was asked whether the rope along Rusk Street was adequate to contain this loose horse. Objection to the question was sustained by the

court. He stated without objection, however, that the single strand of rope did not keep the Veatch horse within the barricade area. Carter further testified that he had worked parades for several years prior to 1965, and that the Veatch horse was the first he had ever seen get out of hand, although he had seen a few "skittish" or scared horses but had never seen one unmanageable. On bill of exceptions he testified that after this particular horse bolted and after the witness had tried to stop the horse, he considered that a dangerous condition existed by reason of such horse on the loose. He said that under the above circumstances there was a possibility that someone could be hurt, and at such time with the horse loose the place was not reasonably safe for the people to be.

Jerry L. King, Director of Traffic and Transportation of the City of Houston, testified before the jury that the main purpose of the rope in question was to keep the crowd out of the streets. Mr. King testified on bill of exception that the movable barricades which the City had available to use were what he called "saw horses," with one top bar connecting them, and that so far as he knew the City had never used a movable barricade with three boards. He stated that the movable barricades which the City owned were used for temporarily closing off part of a street where a type of work was going on which made it necessary for traffic to use only a certain portion of such street. The witness identified a copy of a book entitled "Manual of Uniform Traffic Control Devices for Streets and Highways," and stated that the City used it extensively. His remaining bill of exceptions testimony dealt with the wooden barricades, when they were used and various details in connection therewith, including the statement that the barricades were for the public's protection and that they physically separate and deter people, animals and cars from one side of a street to the other side.

An examination of the above manual, introduced in evidence by appellants on bill of exceptions, indicates, however, that the barriers referred to and similar ones deal with road construction and maintenance jobs. For instance, Sec. 5C-1 of the manual entitled "Function" reads as follows:

"Adequate barriers and channelizing devices, such as barricades, cones, drums, and sandbags, properly used, *are essential to the safety of workmen and of the traveling public at most road construction and maintenance jobs.* These devices, of themselves, convey no specific message, though a barricade may have signs mounted on it. They are intended to impose an obstacle, real or apparent, in the normal channel of travel, or to mark a limited channel of travel. They must be highly visible in themselves but they should also be protected by adequate advance warning devices and by suitable lighting devices at night (Secs. 5D-1 to 4). The provisions that follow are intended, in general, to apply to relatively high-speed, open highway situations." (Emphasis added).

The above three witnesses were questioned extensively in connection with the above and following paragraphs of the manual, all dealing with the "saw horse" barricades and the possible additional safety which might result under the above-stated circumstances.

 Appellants apparently contend that it was the duty of the City of Houston to place wooden barricades and additional barriers along the entire parade route. Whether such barricades were available for such purposes and the number of them on hand were not shown by the record. There had never before been a runaway horse at a Fat Stock Show Parade, and the Chief of Police did not consider such additional barricades to be horse-proof. The sidewalk upon which appellants were standing and watching the parade was three feet above street level, and the wooden saw-horse barricades available to the City were about 36 inches high. Appellants showed neither restrictions on the use of the city streets, nor

did they attempt to prove that "When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable (uses)," was not the law today. See Patton-Worsham Drug Co. v. Drennon, 104 Tex. 62, 133 S.W. 871. We have given this matter careful consideration, and we are of the opinion that the City's failure to place wooden barricades or additional barriers along the parade route constitutes no violation of duty to the public under the circumstances and cannot constitute negligence proximately causing the accident in question, as a matter of law. While the relationship of the parties is somewhat different, we consider the case of the City of Dallas v. Maxwell, 248 S.W. 667 (Tex.Com. App.), to be controlling of this question. It was there said by Justice McClendon for the Court:

"The weight of authority, which to our mind is in accord with sound principles, is to the effect that, where the injury to the traveler results from loss of entire control and direction of an animal or machine, the occurrence falls within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable. Of course, this holding has no application to those cases in which some defect in the street was a contributing cause toward rendering the animal or machine uncontrollable."

The crowd and noise of a parade and the failure to use such wooden barricades do not constitute street defect or the required defect in the street itself. See City of Austin v. Daniels, 160 Tex. 628, 335 S.W.2d 753, 756. See also Watkins v. Davis, 308 S.W.2d 906 (Tex.Civ.App.), writ ref., n. r. e.; Ritger v. City of Milwaukee, 99 Wis. 190, 74 N.W. 815. And see Lee v. City of Dallas, 267 S.W. 1014 (Tex.Civ.App.), no writ. The City of Houston was obligated to do no more in this case than it did do, i. e., stretch the rope barrier and furnish the neceessary policemen. The trial court did not abuse its discretion or commit reversible error in refusing to allow appellants to interrogate the witnesses before the jury concerning the availability or efficacy of barricades or additional barriers which the City was not obliged here to use if available. The above contentions of appellants are overruled.

■ Appellants further complain that the trial court committed reversible error in refusing to permit them to complete their bill of exceptions concerning the testimony of Chief of Police Short. After approximately nine pages of bill of exceptions testimony in the statement of facts, almost all of it relating to the use of movable barricades and the resulting safety possibly created thereby, the trial court stated to counsel for appellants that the prior testimony on bill of exceptions admitted for that purpose was sufficient to indicate to the appellate court what testimony appellants desired to introduce. Exception was timely made by counsel for appellants, and the trial court refused to hear further testimony on the informal bill in the absence of the jury as shown by the statement of facts.

■ Except for the type of questions actually propounded on the informal bill of exceptions, this Court has no way of knowing what further testimony the appellants desired or were able to produce on their bill of exceptions. Any objection to a ruling on evidence or other matters may be shown in a statement of facts without a formal bill of exceptions, but a formal bill is permissible. It is settled, however, that points of error relating to the admission or exclusion of evidence will not be considered by an appellate court in the absence of a bill of exceptions or a statement of facts. See 4 Tex.Jur.2d, Sec. 497, p. 29 and cases cited. The desired and excluded evidence must be shown in the record, and if the trial court refuses to hear further testimony, a formal bill of exceptions is necessary, and the bill should set out the *substance* of the additional evidence that the appellants would have offered. Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155, 159 (Tex. Com.App.), op. adopted; Gray v. Mills, 206 S.W.2d 278, 280 (Tex.Civ.App.), aff'd, 147 Tex. 33, 210 S.W.2d 985; Johnson v.

Poe, 210 S.W.2d 264, 266–267 (Tex.Civ. App.), writ ref., n. r. e.; City of Houston v. Huber, 311 S.W.2d 488, 495 (Tex.Civ.App.), no writ; McDowell v. Central Power & Light Company, 420 S.W.2d 816, 819 (Tex. Civ.App.), no writ; Smith v. Stegall, 336 S.W.2d 470, 472 (Tex.Civ.App.), no writ; Rule 372, Texas Rules of Civil Procedure. And see 3 Tex.Jur.2d, Secs. 415, 416, pp. 669–673. Moreover, appellants have the burden to show that the rejection of the proffered or anticipated testimony was reversible error, and that such error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.; McDowell v. Central Power & Light Company, supra. Under our holdings above, no reversible error is shown.

We have considered all contentions made by the parties, and we are of the opinion that the judgment below should be affirmed.