HARRY MILLS ET AL V. EVA GRAY ET AL.

No. A-1559. Decided May 5, 1948.
Rehearing overruled June 2, 1948.
(210 S. W., 2d Series, 985.)

*Hill, Paddock & Langdon,* and *Homer S. Hill,* all of Fort Worth, for petitioners.

It was error for the Court of Civil Appeals to hold that a deed absolute on its face was executed and delivered on an express oral trust that the grantee would reconvey the property to the grantors, or, if sold, distribute the proceeds to grantors according to their respective interests; that where such conveyance has been made and transferee, relying on the statute of frauds, refused to perform the trust, a constructive trust arises in favor of transferor; that parol evidence is admissible to prove such trust where the alleged trustee has changed the subject matter of the trust from realty to personalty. Broadway Building Co. v. Salafia, 47 R. I. 263, 132 Atl. 527, 45 A. L. R. 847; Faville v. Robinson, 111 Texas 48, 227 S. W. 938; Binford v. Synder, 144 Texas 134, 189 S. W. (2d) 471.

*Frank R. Graves,* of Fort Worth, for respondents.

· The facts upon which the case was tried and all the evidence established conclusively that the conveyance in question to Harry G. Mills raised a resulting or constructive trust, as distinguished from an express trust, and by virtue of Article 7425b-2, R. C. S., the Texas Trust Act, does not apply. Stevens v. Fitzpatrick, 218 Mo. 708, 118 S. W. 51; Kaphan v. Toney, _____ Tenn. _____, 58 S. W. 909; Norton v. Bassett, 154 Cal. 411, 97 Pac. 894, 129 Am. St. Rep., 162.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit involves primarily the construction of Sec. 7 of the Texas Trust Act enacted by the Legislature in 1943. Acts 1943, 48th Leg. p. 232, ch. 148.

Mrs. Eva Gray, wife of J. L. Gray, was formerly the wife of Benjamin C. Mills, who died intestate in 1909, leaving four children of that marriage, namely, Benjamin C. Mills, Jr., Mabel

M. Mills, George W. Mills and Harry G. Mills. Mabel M. Mills is now Mrs. Mabel M. Harper. During the marriage of Mrs. Gray and her former husband they acquired and owned at the time of his death a community estate consisting chiefly of their homestead on Broadway Street in Fort Worth. In 1911 his widow was married to her present husband, who also had theretofore been married, and they lived in the old homestead until August of 1945. During the marriage of Mr. and Mrs. Gray they acquired a home in Glen Rose and some personal property, which was their community property. Mr. Gray was also claiming a community interest in the Fort Worth property for money advanced out of his and Mrs. Gray's community funds to make improvements on the property. No division had been made of the first community prior to the transaction in 1945 out of which this controversy arose.

In August of 1945 Mr. and Mrs. Gray were having serious marital troubles and were contemplating a divorce and an amicable division of the two community estates between all the interested parties. During these negotiations Mr. and Mrs. Gray and three of Mrs. Gray's children conveyed the Fort Worth property to her other son, Harry G. Mills, for a recited consideration of one dollar and other valuable considerations. No consideration actually passed with the deed. The Grays also delivered to Harry G. Mills certain household furnishings in Fort Worth of the alleged value of $2,500.00. At the same time Mr. and Mrs. Gray conveyed the Glen Rose property to Herbert Gray, a son of J. L. Gray by his former marriage. On October 13, 1945, Mr. and Mrs. Gray were divorced; but they were reconciled and remarried January 20, 1946.

After the divorce, and prior to her remarriage to Gray, Mrs. Gray resided with her son, Harry G. Mills. During that time the homestead property on Broadway was sold by Harry G. Mills for $6,000.00, less certain expenses of the sale, and another home on Riverside in Fort Worth was purchased for $11,-000.00. The money received from the sale of the Broadway property was used as a part of the purchase price for the Riverside property. Mrs. Gray also furnished some cash in the deal, a part of which was derived from the sale of the furniture which she had delivered to her son. There was also a vendor's lien note for $3,000.00 executed by her son as a part of the $11,000.00 consideration. The sale of the Broadway property and the purchase of the Riverside property was with the knowledge and consent of Mrs. Gray, except she contends that it

was understood between her and her son that the title to the Rivereside property would be taken in her name. Instead, it was taken in the name of her son, Harry G. Mills.

This suit was filed by the respondents, Mrs. Gray and her husband, J. L. Gray, against the petitioners, Harry G. Mills and wife, Inez Mills, and Mrs. Harper, and by cross action of petitioners Benjamin C. Mills, Jr., and George W. Mills were made parties. The latter two sons joined in and adopted the pleadings of Mr. and Mrs. Gray, and conveyed to their mother all their interest in the property. Mrs. Harper joined in and adopted the allegations of her brother, Harry G. Mills.

The respondents alleged, and attempted to prove, that the Broadway property was conveyed to Harry G. Mills only in accordance with the plan of settling the community affairs of Mr. and Mrs. Gray, and that it was understood by all concerned that the property would be held by him in trust for the benefit of his mother and the other children, and that after the divorce he would reconvey it to her, or, if sold, he would divide the proceeds among the parties entitled thereto. There were no allegations of fraud, accident or mistake.

The petitioners denied the existence of a trust and alleged that the Broadway property was conveyed to Harry G. Mills under an agreement that he would support and maintain his mother, clothe and feed her, and furnish her a home for the remainder of her life; that at the insistence of Mrs. Gray, and with her full knowledge and consent, the Broadway property was sold and the money received therefor was used by him in the purchase of the Riverside property; that he was ready, able and willing to carry out his agreement; and that by reason of the agreement the respondents had no title or right of possession of the Riverside property. They further alleged that if any trust existed the same was an express parol trust and that the same is void and unenforceable by reason of the statute of frauds (Art. 3995, R. C. S. of Texas), the statute of conveyance (Art. 1288, R. C. S. of Texas), and by Sec. 7 of the Texas Trust Act (Art. 7425, b 7).

In the trial before a jury the respondents attempted to prove the existence of the trust by offering evidence of the agreement and understanding between the parties prior to and at the time of the conveyance of the Broadway property to Harry G. Mills. Upon objection by petitioners that the proffered testimony was

inadmissible under the statutes pleaded, the evidence was excluded from the jury, but is brought forward by bills of exceptions. In that state of the evidence the jury found that the Broadway property was not conveyed in trust but that the same was conveyed in consideration of the promise of Harry G. Mills to provide Mrs. Gray a home and place to live as long as she desired. Upon that verdict judgment was rendered that respondent take nothing.

The Court of Civil Appeals reversed and remanded the judgment of the trial court upon the theory that the excluded testimony was admissible since that court concluded that the agreement, if established, created a constructive trust and thus was not affected by the Texas Trust Act. 206 S. W. (2d) 278.

■ Section 7 of the Texas Trust Act provides that a trust in relation to real property shall be invalid unless created, established or declared by a written instrument. The second section of the Act, however, provides that the term "Trust" means an express trust only, and does not include resulting or constructive trusts, nor certain other trusts not here material. Thus, if the alleged trust was an express trust the testimony offered was inadmissible, but if it was a constructive or resulting trust the same was admissible.

■ Clear and concise statements of the distinction between express trusts, constructive trusts, and resultant trusts, and the law with reference thereto, may be found under the topic of "Trusts" in American Jurisprudence.

In 54 Am. Jur. 22, Sec. 5, is the following announcement:

" * * * From the viewpoint of the creative force bringing them into existence, trusts may be classed as 'express trusts' and 'trusts by operation of law,' the latter being either resulting or constructive trusts. An express trust can come into existence only by the execution of an intention to create it by the one having legal and equitable dominion over the property made subject to it. A trust by operation of law, frequently called an 'implied trust,' comes into existence either through an implication of intention to create a trust as a matter of law or through the imposition of the trust irrespective of, and even contrary to, any, such intention. In other words, a trust intentional in fact is an express trust; one intentional in law is a resulting trust; and one imposed irrespective of intention is a constructive trust."

The distinction between resultant and constructive trusts is admittedly confusing, but as accurate a statement as may be found is that of the same text, in 54 Am. Jur. 147, Sec. 188, as follows:

"Resulting and constructive trusts are distinguishable, but there is some confusion between them. From a practical viewpoint, a resulting trust involves primarily the operation of the equitable doctrine of consideration—the doctrine that valuable consideration and not legal title determines the equitable title or interest resulting from a transaction—whereas a constructive trust generally involves primarily a presence of fraud, in view of which equitable title or interest should be recognized in some person other than the taker or holder of the legal title."

Ordinarily a parol agreement between a grantor and a grantee that the property conveyed shall be held in trust for the grantor or reconveyed to the grantor or some other person, is an express trust which cannot be enforced where the statute of frauds requires a written instrument to create a trust. 35 A. L. R. 281, and authorities cited. But that rule has its exceptions.

In Restatement of the Law, Vol. 1, Sec. 44, at page 135, in discussing the rule where the statute requires trusts to be in writing, the text states:

"(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

(a) the transfer was procured by fraud, duress, undue influence or mistake, or

(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

(c) the transfer was made as security for an indebtedness of the transferor.

"(2) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, and the transferor's intention to create a trust but not the identity of the beneficiary is properly manifested, and the transferee refuses

to perform the trust, the transferee holds the interest upon a resulting trust for the transferor."

Also in 54 Am. Jur. 178, Sec. 233, as particularly applicable here, is the following:

"A constructive trust arises where a conveyance is induced on the ground of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof. A parent and child, grandparent and child, or brother and sister relationship is not intrinsically one of confidence, but under circumstances involves a confidence the abuse of which gives rise to a constructive trust in accordance with the terms of an agreement or promise of a grantee to hold in trust or to reconvey."

In Scott on Trusts, Vol. 1, 253, Sec. 44.2, is the further statement:

"There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise."

In 159 A. L. R. 1007, supplementing annotations in 35 A. L. R. 307, 80 A. L. R. 204, and 129 A. L. R. 695, the annotator announces a similar rule in the following language:

"Fraud sufficient to raise a constructive trust from an oral promise made by the grantee to his grantor is not necessarily

limited to actual fraud. As the earlier annotations indicate, the breach of a confidential relationship existing between the grantor and the grantee frequently is considered to be such constructive fraud as will give rise to a constructive trust."

■ Under these principles, if the purported agreement and family arrangement had been established as true, a constructive trust would have arisen by reason of the confidential relation between the parties which would not fall within the prohibition of the Statute of Frauds or the Texas Trust Act. The testimony was therefore erroneously excluded by the trial court.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 5, 1948.

Rehearing overruled June 2, 1948.