Lenora MATHEWS, Appellant,

v.

Marion MATHEWS, Appellee.

No. 13188.

Court of Civil Appeals of Texas.

Houston.

Feb. 20, 1958.

John P. Spiller, Houston, Julius F. Franki, Austin, for appellant.

Childress, Port & Crady, Charles Crady, III, Houston, for appellee.

WOODRUFF, Justice.

This suit was originally filed by appellee, Marion Mathews, in 1954 against appellant, Lenora Mathews, seeking a divorce and a division of community property. Appellant answered by cross-acting for divorce, and alleging there was no community property. Upon a hearing on the merits, the District Court granted appellant a divorce on her cross-action, declared the real property known as Lots 8 and 9, Block 50 of Houston Heights Addition, which incidentally is the subject of the dispute here, to be their community property and awarded each an undivided one-half interest therein. Lenora Mathews perfected an appeal to this Court from that part of the judgment adjudicating these lots to be community property of the parties.

In an opinion dated July 12, 1956, in Cause No. 12,993, styled Mathews v. Mathews, reported in Tex.Civ.App., 292 S.W.2d 662, this Court sustained appellant's contention that the trial court was in error in declaring this property to be community and in partitioning it as such by awarding each litigant an equal one-half interest therein because the undisputed proof showed that the parties were not legally married at the time title to these lots was acquired.

It was observed, however, that the record contained evidence which if believed might support a partition of the property between Marion and Lenora Mathews on the theory

of a resulting or constructive trust under the philosophy of Gray v. Mills, Tex.Civ. App., 206 S.W.2d 278, affirmed 147 Tex. 33, 210 S.W.2d 985.

It was concluded that justice would be subserved by affirming that part of the judgment granting a divorce and remanding for a new trial that part which involved the disposition of the property. It was, therefore, so ordered.

The case now having been tried anew in the District Court of Harris County, it is before us upon an appeal again perfected by Lenora Mathews from the court's judgment rendered May 8, 1957, awarding appellee, Marion Mathews, a recovery against her for a half interest in the same property, reciting "that Lots 8 and 9, Block 50, Houston Heights Addition, Harris County, Texas, the apparent legal title to which is in the name of defendant (Lenora Mathews), is actually owned in equal undivided interests by plaintiff and defendant as tenants in common."

Appellee went to trial on his first amended original petition filed April 25, 1957, wherein he alleged that the former decree entered in this cause awarding appellant a divorce had been affirmed but the trial court's judgment concerning the property rights of the parties had been reversed and remanded for a new trial. It was alleged that on October 3, 1951, while not married to appellant, he had executed and delivered to appellant a deed conveying to her Lots 8 and 9, Block 50, Houston Heights Addition, together with all improvements thereon but that no cash was actually paid for the deed. The petition further alleged that prior to 1935, appellee and appellant were first married at a time when he, appellee, was still married to a woman named "Alma", although in good faith he thought he had been divorced. Before learning that he and Lenora were not lawfully married, so he alleged, they had purchased Lots 8 and 9, Block 50, Houston Heights Addition, erected a residence thereon, occupying it as a home until the latter part of 1950,

when due to ill health he had entered the Veterans' Hospital at Fort Baird, New Mexico. While there, by reason of the Government's stopping Lenora's subsistence checks, he learned he was not divorced from "Alma" and thereafter a lawyer was employed to get him a divorce from "Alma", which was obtained on September 17, 1951.

Appellee, Marion Mathews, further alleged that while he was in the hospital in New Mexico Lenora Mathews continued to live in Houston and she consulted a lawyer who told her that if she did not get the title to the lots "straightened out", "Alma" could "cause trouble" for her if appellee died in the hospital. Relying on this belief, appellant had the lawyer draw a deed from appellee to her covering all of Lots 8 and 9, Block 50, which she took to Fort Baird, New Mexico, to visit plaintiff and to remarry him.

Appellee further averred that appellant told him of her fears that "Alma" could cause her trouble or take the lots away from her if he died in the hospital, and induced him to execute the deed to such lots to her upon the promise that she would reconvey a one-half interest therein to him if he recovered and got out of the hospital.

Appellee alleged his recovery and, after leaving the hospital, his making demand upon appellant to reconvey to him an undivided one-half interest therein, and her failure and refusal to do so, and prayed judgment awarding to him an undivided one-half interest in this property.

Appellant, in addition to a general denial, pled defensively that appellee could not vary or contradict by parol evidence an instrument in writing in violation of the Statute of Frauds.

The case was tried to the court without a jury. In order to narrow the testimony the parties introduced in evidence stipulations of fact, the material parts reading as follows:

"In order to expedite trial of the respective property rights, if any, of

the parties hereto, the following facts are stipulated to be true:

"1) Plaintiff and defendant are adult Negroes who have been residents of Harris County, Texas, at all times material hereto, except as stated herein.

"2) Prior to 1925, Marion Mathews married a woman named Alma in 1925, he had employed an attorney Cobb who actually filed suit for divorce on behalf of Marion against Alma.

"3) Marion Mathews was not legally divorced from Alma until September 17, 1951, when judgment of divorce was rendered in his favor in Cause No. 393,019, by the 80th Judicial District Court, Harris County, Texas, a certified copy of which, marked 'Defendant's Exhibit 1', has been filed herein heretofore, and by reference is made a part hereof.

"4) Prior to 1935, Marion and Lenora Mathews were married in a ceremonial marriage; but at the time of such marriage Marion was still married to Alma.

"5) On September 21, 1935, Marion and Lenora Matthews, as husband and wife, entered into a contract for deed with one Helen D. Milroy, of Harris County, Texas, for the purchase of Lots 8 and 9, Block 50, Houston Heights, Harris County, Texas. This contract for deed consummated in delivery of a general warranty deed covering such property from Helen D. Milroy to 'Marion Mathews and Lenora Mathews, husband and wife', which deed dated January 7, 1947, appears of record in Volume 1542, Page 294, Deed Records, Harris County, Texas, and a certified copy thereof has been filed herein heretofore as Plaintiff's Exhibit 1, and by reference is made a part hereof.

"6) The consideration paid for such deed, and the residence erected thereon, was paid jointly by Marion and Lenora Mathews at times when they thought they were husband and wife.

"7) Prior to September 1y, 1951 Marion Mathews, who is a veteran of World War 1. entered the Veteran's Hospital at Fort Baird, New Mexico, and while there, he and Lenora learned for the first time they were not lawfully married as a result of which the government ceased sending allotment checks to Lenora since she was not the lawful wife of Marion.

"8) Following the discovery that Marion was still legally married to Alma, the services of an attorney in Harris County, Texas, were obtained, and Marion procured a divorce from Alma, on September 17, 1951.

"9) On October 3, 1951, Marion and Lenora Mathews were lawfully married in Fort Baird, New Mexico, which marriage was a ceremonial marriage.

"10) Prior to the performance of the marriage ceremony on October 3, 1951, Marion Mathews executed and delivered a deed to Lenora Mathews, conveying unto her Lots 8 and 9, Block 50, Houston Heights, Harris County, Texas, together with all improvements thereon, which deed is dated September 3, 1951, is acknowledged October 3, 1951, and appears of record in Volume 2345, Page 662, Deed Records, Harris County, Texas, and a certified copy thereof has been filed herein heretofore as Plaintiff's Exhibit No. 2, and by reference is made a part hereof. Such deed recites that the consideration therefor has been paid by Lenora out of her separate property and estate."

The only witnesses who testified upon the trial were Marion and Lenora Mathews.

The trial court filed no Findings of Fact or Conclusions of Law and the record fails to reflect that any request therefor was made by either party.

Appellant's first Point of Error is that the trial court erred in engrafting a resulting or constructive trust upon appellee's deed dated October 3, 1951, whereby he conveyed the property in question to appellant, Lenora Mathews.

That deed recites, so appellant points out, that the consideration was paid by Lenora Mathews "out of her separate funds and estate" and the lots were conveyed to her "as her separate estate and property;" and further the habendum clause provided: "To have and to hold the above described premises, together with all and singular the rights and appurtenances in anywise belonging unto the said Lenora Mathews as her separate property and estate, her heirs and assigns forever," which was followed by the usual terms of a general warranty of the title.

Appellant relies upon the holdings in Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; McKivett v. McKivett, 123 Tex. 298, 70 S.W.2d 694; Kidd v. Young, 144 Tex. 322, 190 S.W.2d 65; Loeb v. Wilhite, Tex.Civ. App., 224 S.W.2d 343 (writ refused, n. r. e.); Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777.

We have studied these opinions and many others involving the same principles. In each of these cases there was an attempt by the grantor or a third person participating in the transaction to the extent of being a party to it to engraft a trust upon deeds absolute by a parol agreement which was made prior to or contemporaneously with the transfer of title to the grantee for a recited contractual consideration, or where, by its terms either expressly or by necessary implication, it was stated that the conveyance was being made for the separate use and benefit of the grantee named therein. In each of these opinions the courts observed the absence of either any allegation of fraud, accident or mistake, or a violation of a confidential relationship on the part of the grantee named in the deed.

We shall not attempt to distinguish the various cases. For all practical purposes they have been thoroughly discussed and interpreted by our Supreme Court in Jackson v. Hernandez, Tex.Civ.App., 285 S.W. 2d 184. In reading the opinion we emphasize one should note the consistent absence of fraud, accident or mistake in those cases which are there discussed where the party seeking to engraft the parol trust upon a deed was denied a recovery.

This, we think, is the differentiation between the holdings of those cases discussed in Jackson v. Hernandez, supra, and those which fall into the category ruled by the opinions in Gray v. Mills, Tex.Civ. App., 206 S.W.2d 278, affirmed by the Supreme Court in Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, and also in Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471.

These cases, in contrast to those dicussed in Jackson v. Hernandez, supra, all involved a species of fraud which as an exception to the parol evidence rule permitted the introduction of parol evidence to prove the true agreement existing between the parties to engraft a constructive trust upon the written instrument contrary to its expressed terms.

We think that the ruling of the Supreme Court in Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, is controlling in this case. There it was definitely held that a constructive trust arises where a coneyance is induced by the agreement of a fiduciary or a confidant to hold property in trust for a reconveyance or other purpose and the grantor believes and relies upon such person because of the confidential relationship and is thereby induced to execute the deed.

From the authorities cited by the Supreme Court in that case, we take the privilege of setting forth the quotation from Scott on Trusts, Vol. 1, page 253, sec. 44.2, which reads as follows:

"There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and

the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise."

Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471, involved another type of violation of a fiduciary's duties and a constructive trust was there engrafted upon a deed given by the trustee to a third party who took it with knowledge of the facts.

In our opinion there can be no serious question about whether or not a confidential relationship existed between Marion and Lenora Mathews on October 3, 1951, the day he executed the deed to her. They had lived together for almost twenty-five years as husband and wife after the performance of a marriage ceremony, and during this time they both believed in good faith that they were married. Each ostensibly manifested the normal interest of married people in the other's welfare. They acquired, during this time, the property which is the subect of dispute in this case, and established and occupied a home thereon for many years. These undisputed facts compel the conclusion that a confidential relationship between them did exist, as a matter of law.

■ As heretofore mentioned, the trial was to the court without a jury, and other than the general findings and conclusions made in the decree no special findings of fact or conclusions of law appear in the record, nor were they requested. Con-

sequently, all fact issues having support in the evidence are presumed to have been found in support of the judgment. State v. Balli, Tex.Civ.App., 173 S.W.2d 522, affirmed by the Supreme Court in 144 Tex. 195, 190 S.W.2d 71; Chanowsky v. Friedman, Tex.Civ.App., 219 S.W.2d 501, wr. ref. n. r. e.; Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562; Rule 299, Texas Rules of Civil Procedure.

To our minds there is ample testimony in the record to support appellee's contention that on October 3, 1951, shortly before the second marriage ceremony was performed between him and Lenora at Fort Baird, New Mexico, appellant told him that if he would sign the deed to her and then died she could keep the property as hers, but if he got out of the hospital then she would deed the property back "to me and her". The testimony likewise supports his contention that he believed her and that was the reason he executed the deed which she had brought with her from Houston, Texas. There were circumstances, too, which lent support to such implied findings. By her own admission appellant feared that "Alma" could cause her trouble over the property; that she believed that "Alma" could take the property if appellee died; that she had asked Mr. Smith, the lawyer, what she could do about it and he told her that she had to get a deed from Marion because Marion's "saying it out of his mouth wouldn't work" and it was she who told the lawyer to draw the deed which she took to Fort Baird on October 3, 1951. It is true that appellant's version of what was said by each of them when Marion executed the deed was at variance with his contention. But be that as it may, the court rendered judgment in appellee's favor and therefore it must be presumed that the trial court found the facts in conformity with appellee's contention that Lenora did agree to reconvey his interest in the property if he lived and got out of the hospital. Under the holdings in the cases of Gray v. Mills, supra, and Mills v. Gray, supra, a constructive trust was thereby

established against the property in appellee's behalf to the extent of his undivided one-half interest, for which amount he was awarded title and right of possession in the judgment. This form of judgment was expressly approved in the strikingly similar case of Markum v. Markum, Tex. Civ.App., 210 S.W. 835, wr. dism., and Markum v. Markum, Tex.Civ.App., 273 S.W. 296, wr. dism. Appellant's first Point is therefore overruled.

In her second and third Points appellant contends that there is no evidence, or, at most, the evidence is wholly insufficient to establish a constructive or resulting trust upon the deed from appellee to appellant.

In support of this contention appellant cities the cases of Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097, and Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, each of which we have read. However, we fail to find in them any ruling pertinent to the issues here. In addition, the cases of King v. Gilleland, 60 Tex. 271; Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352; and Mellette v. Hudstan Oil Corp., Tex.Civ.App., 243 S.W.2d 438, have also been cited and considered. They each discuss the sufficiency of the evidence which is required to prove a trust by parol, and in substantially the same language they hold that in order to engraft a trust upon real property by parol the proof must be clear and convincing.

Appellant says, as it was contended in Jackson v. Hernandez, supra, that appellee's testimony in this case is without corroboration by any other witness and that it fails to meet the test of being clear and convincing. While it is true that the only witnesses who testified were appellee and appellant, it cannot be said that appellant's own testimony did not to any degree corroborate appellee's proof. In fact, a great many cogent circumstances which lent credence to appellee's contentions were established by appellant's own testimony. We have heretofore reviewed that testimony

and we are of the opinion that the proof in this case meets the test of being clear and satisfactory. Jackson v. Hernandez, Tex. Civ.App., 274 S.W.2d 131, affirmed, Tex., 285 S.W.2d 184. Appellant's Points 2 and 3 are, therefore, overruled.

The judgment of the trial court is affirmed.