Eliseo **CUELLAR** and Anastacia Garcia Cuellar, Appellants,

v.

Keith E. **COOK**, Appellee.

No. 14092.

Court of Civil Appeals of Texas.

San Antonio.

May 1, 1963.

Werner A. Gohmert, Alice, for appellant.

Perkins, Floyd, Davis & Oden, Alice, for appellee.

MURRAY, Chief Justice.

This is a suit in trespass to try title, instituted by Eliseo Cuellar and wife, Anastacia Garcia Cuellar, against Keith E. Cook, seeking to recover the title to and possession of 157 acres of land located in Jim Wells County. Keith E. Cook filed a motion for summary judgment, which was granted by the trial court and judgment entered that plaintiffs take nothing, from which summary judgment Eliseo Cuellar and wife have prosecuted this appeal.

Appellants make but one point, reading as follows:

"The trial court erred in sustaining Appellee's motion for a summary judgment."

The 157 acres involved were originally owned by the parents of Eliseo Cuellar. His parents died intestate leaving seven children surviving them, who inherited the 157 acres of land. As it would be a difficult matter to divide the land among the heirs, and as there were debts to be paid, Eliseo Cuellar decided to borrow money, buy out the other heirs, and become the owner of the land. So appellants went to see appellee, Keith E. Cook, who had been in the insurance and real estate business since 1946, and obtained loans for people on real estate. Appellee deals in all kinds of property and does appraisal work. Appellants went to appellee in order to secure a loan, so that they could pay off the other heirs and own the land themselves. Appellants were told by appellee that before he could get a loan on the land it would be necessary for all the heirs to sign a sales contract. This they did on November 9, 1956, and on December 4, 1956, appellee obtained a loan from the First State Bank of Alice in the sum of $5,000.00, secured by a deed of trust, signed by him, on the 157 acres of land. A deed was signed and acknowledged by the seven heirs to the land and their spouses on December 3, 1956, conveying the property to appellee.

Thereafter, on December 10, 1956, appellee as seller and appellants as buyers, made and entered into a contract of sale of the 157 acres of land by the terms of which appellee agreed to sell this property to appellants for the sum of $9,400.20, with no cash down, but payable in equal monthly installments of $156.00, beginning on the 1st day of December, 1956, and a like payment being due and payable on or before the 1st day of each month thereafter for sixty months, until such purchase price was fully paid. Thereafter, appellants defaulted and appellee terminated the contract of sale and took possession of the 157 acres, during the month of December, 1958, and has been in possession of same at all times since such date.

Appellants admit signing the above written instruments and offer no legal reason why they should not be bound by them. They contend that there was a confidential and fiduciary relation existing between them and appellee. The evidence does not raise a fact issue as to such relation. The record shows that they were dealing with each other at arm's length and solemnly executed the above instruments. Thigpen v. Locke, Tex., 363 S.W. 2d 247.

In support of this contention appellants cite the cases of Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985; Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401; Cartwright v. Minton, Tex.Civ.App., 318 S.W. 2d 449. The first case involved the fiduciary relation between mother and son; the second, involved the relation of joint adventurers, and the third, that of exec-

utor and legatee and devisees. None of these relationships exist here.

 Appellants next contend that the deed from Eliseo Cuellar and his sisters and brothers was intended as a mortgage. There is nothing to raise this issue. The admission of Eliseo Cuellar is to the contrary. He admits signing the purchase contract with appellee and finally made the following admission:

"Q. I see. Under the terms, Mr. Cuellar, of your contract of sale with Mr. Cook by which you bought the property back, you were to pay him in monthly installments?

"A Yes, sir.

"Q And you were to pay a total of $9,400.20?

"A Well, that was his price.

"Q That was what it said in the contract?

"A Yes, sir.

"Q And that was to be paid $156.67 a month?

"A That's correct. * * *

"Q Then the contract did provide that it was $156.67 a month?

"A Yes, sir.

"Q And it was to begin on December 1, 1956?

"A That's right.

"Q All right. Now, you recognized your obligation to pay that money?

"A Yes, I did. * * *

"Q You thought what? I'm sorry; I didn't hear that.

"A He must have—I don't know what he thought, but he must have thought that it was a chance for him to take hold of the land, so he did. That's all I know.

"Q And you think that he is not entitled to do that?

"A No, because I was—with all my heart I was planning to pay for it. That was my general intention."

Cuellar indicated that because he was eight or ten days late in a payment, appellee foreclosed and that he did not think that was the right thing to do, and when asked:

"Q All right, sir. And is that what this lawsuit is based on?

"A That's all there is to it."

The entire situation shows that appellants did not intend that the deed to appellee should be only a mortgage. Even if the deed was intended to be only a mortgage, appellee being a mortgagee in possession of the land, appellants could not recover the land without repaying the $5,000.00 they received, and they have neither plead nor attempted to prove that they are willing to repay the $5,000.00.

The judgment of the trial court is affirmed.