Jacqueline Ruth JOHNSTON, Appellant,

v.

Leslie Bruce MABREY, Appellee.

No. 13–83–410–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1984.

Rehearing Denied Sept. 20, 1984.

James H. Robichaux, Harris, Cook & Browning, Corpus Christi, for appellant.

Ann E. Coover, Coover & Coover, Corpus Christi, for appellee.

Before NYE, C.J., and GONZALEZ and KENNEDY, JJ.

## OPINION

GONZALEZ, Justice.

This is a limited appeal in a suit for divorce tried before the court without a jury. The only issue before us is the propriety of the trial court's order imposing a constructive trust on one piece of property. Appellant complains that she was wrongfully divested of her separate property. We affirm.

We have before us a voluminous record. The pertinent facts can be summarized as follows: This is the second marriage of Johnston (appellant) and Mabrey (appellee) to each other. No children were born or adopted in either of their marriages. Their relationship began in the early 1970's, but was interrupted by their first divorce, in August 1975. The parties continued being intimate with one another after the divorce and in October 1975, Mabrey purchased a home on Ocean Drive in Corpus Christi. He moved into the house and started extensive renovations. Johnston occasionally spent the night with him, and in May 1976, she eventually moved into the house to live with him.

Mabrey purchased the house for $6,500 cash plus a promissory note for $30,000.[1] On March 15, 1976, while the parties were still unmarried, Mabrey executed a deed to this property to Johnston. Mabrey continued to live with Johnston on the property after this purported sale.

Johnston gave Mabrey a check for $6,500. This check was deposited in a joint checking and savings account with both Johnston and Mabrey authorized to make

---

1. At the time of the second divorce, June 1983, the house was appraised at $174,500.

withdrawals. These funds were used by both of them to renovate the house.

On December 22, 1977, the parties went through their second wedding ceremony. Besides their marital and extra-marital relationship, Johnston and Mabrey were also business partners in a number of joint ventures, most of which were unsuccessful.

On June 9, 1981, Johnston filed suit for divorce, alleging that the Ocean Drive property was her separate property. Mabrey counterclaimed, alleging the property was conveyed to Johnston as trustee for both of the parties. Mabrey pled in the alternative that he was entitled to reimbursement for the improvements.

During lengthy proceedings, Johnston gave several versions of the transaction. The trial court did not believe Johnston and impressed a constructive trust on the property and ordered that it be sold with the proceeds to be divided equally between the parties. The trial court allowed Johnston to live in the house pending the sale.

Among various findings of fact filed by the trial court, the following give some indication of the nature of the dispute between the parties, the resolution of the controversy by the trial court, and the issues of the appeal.

## FINDINGS OF FACT

1. [T]he parties divorced, partly for the purpose of protecting some of the marriage assets from creditors on debts created during the first marriage of the parties herein.

4. On the advice of both parties' lawyer (who was not counsel herein) and in an effort to protect his assets, Mabrey entered into an agreement with Johnston whereby Mabrey would convey the property to her in trust with her giving illusory consideration of $6,500.00 in payment of the home along with the alleged assumption of the note underlying the debt in the amount of $29,544.00. The parties agreed that one-half of the property would be owned by each of them.

11. Johnston denied the existence of any collateral agreement for the deed as well as denying that the initial consideration paid has been returned to the home in the form of improvements. Johnston's testimony is inconsistent and incredible and remained inconsistent throughout the discovery process and the trial. . . .

12. It is apparent that Johnston induced Mabrey to deed her the residence at 1605 Ocean Drive with a promise that she would act as trustee for him. Johnston had been twice divorced at that time, and was knowledgeable in matters of community and separate property. Mabrey never removed himself from the home, (with Johnston's approval) he continued to act as owner of the home, paying the mortgage payments, maintaining the home, and improving the home.

13. Johnston's denial of the agreement is rebutted by the testimony and by the evidence before this Court. Mabrey's conveyance of the real estate to Johnston for an amount of money in the sum of $10,000 less than what he considered its fair market value to be, his return of the total consideration paid to the home in the form of payments for improvements, his continuing obligation and payments on the mortgage indebtedness, (or his payments to Johnston on behalf of the mortgage indebtedness) all lead the Court to one inescapable conclusion: the parties had a trust agreement on the residence and according to such trust, one-half of the home belongs to Mabrey.

Appellant's thirteen points of error may be distilled into two complaints. First, in point of error number one, she alleges the trial court erred in admitting parol evidence that tended to diminish the estate conveyed by a warranty deed, absolute on its face, from Mabrey to herself. This parol evidence was testimony from Mabrey that Johnston received the property in trust for their mutual benefit.

Second, by point of error number seven, appellant alleges the trial court compounded its original error by relying on the al-

legedly inadmissible testimony to impose a constructive trust on the Ocean Drive property.

Appellant's remaining points of error consist of various attacks on the legal or factual sufficiency of the evidence to support the above rulings. By these points, appellant petitions this Court to restore all interests in the property to her separate estate.

The dispositive issue on appeal is whether the doctrine of constructive trust is applicable, and, if so, whether it is available to Mabrey to defend the judgment.

## FRAUDULENT CONVEYANCE

Though not included in either her motion for new trial or in the points to be relied upon for appeal, Johnston now raises the argument in her brief, though not by specific point of error, that this Court must deny the imposition of any constructive trust because the conveyance from Mabrey to Johnston was made to defraud creditors. *See Leal v. Cortez,* 603 S.W.2d 262, 264 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

■ In addressing this issue, we first note that Johnston failed to plead the alleged fraudulent conveyance, and the transcript is devoid of any trial amendment. Therefore, if tried at all, the issue was tried by consent. In any event, Johnston would have had to establish by a preponderance of the evidence that the conveyance was actuated by fraud, and this she failed to do. *See Ellis v. Ureste,* 159 S.W.2d 226, 227 (Tex.Civ.App.—San Antonio 1942, writ ref'd w.o.m.).

We have examined the evidence and cannot say that appellant established a fraudulent conveyance as a matter of law. The findings and the overwhelming evidence suggest that transfer was made to Johnston for her to hold as trustee for both parties.

## PAROL EVIDENCE

Johnston argues:

The parol evidence rule expressly prohibits and precludes the admissibility of any parol proof which has the effect of limiting, qualifying or imposing a condition upon the estate conveyed; and especially if the attempt is to show reservation of an interest and contradiction of the clear import of the conveyance.

In *Rankin v. Naftalis,* 557 S.W.2d 940, 944 (Tex.1977), the Supreme Court wrote: "A constructive trust escapes the unquestioned general rule that land titles must not rest in parol, but to do so, there must be strict proof of a prior confidential relationship and unfair conduct or unjust enrichment on the part of the wrongdoer."

■ We overrule appellant's first point of error alleging that parol evidence may not be admitted to qualify the estate conveyed. The opinion in *Naftalis* held that parol evidence may be admitted upon a showing of:

(1) strict proof of a prior confidential relationship, *and*

(2) unfair conduct or unjust enrichment.

As stated in *Mills v. Gray,* 147 Tex. 33, 210 S.W.2d 985 (1948):

Ordinarily a parol agreement between a grantor and a grantee that the property conveyed shall be held in trust for the grantor or reconveyed to the grantor or some other person, is an express trust which cannot be enforced where the statute of frauds requires a written instrument to create a trust. 35 A.L.R. 281, and authorities cited. *But that rule has its exceptions.* (emphasis added)

210 S.W.2d at 988. One of those exceptions is when the doctrine of constructive trust is applicable. *Id.* at 989.

## CONSTRUCTIVE TRUST

■ A constructive trust is imposed by law because the person holding title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 405 (1960).

In *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948), the Supreme Court distinguished between express trusts, constructive trusts, and resultant trust:

> From the viewpoint of the creative force bringing them into existence, trusts may be classed as "express trusts" and "trusts by operation of law," the latter being either resulting or constructive trusts. An express trust can come into existence only by the execution of an intention to create it by the one having legal and equitable dominion over the property made subject to it. A trust by operation of law, frequently called an "implied trust," comes into existence either through an implication of intention to create a trust as a matter of law or through the imposition of the trust irrespective of, and even contrary to any, such intention. In other words, a trust intentional in fact is an express trust; one intentional in law is a resulting trust; and one imposed irrespective of intention is a constructive trust.

> The distinction between resultant and constructive trusts is admittedly confusing, but as accurate a statement as may be found is that of the same text, in 54 Am.Jur. 147, Sec. 188, as follows:

> Resulting and constructive trusts are distinguishable, but there is some confusion between them. From a practical viewpoint, a resulting trust involves primarily the operation of the equitable doctrine of consideration—the doctrine that valuable consideration and not legal title determines the equitable title or interest resulting from a transaction—whereas a constructive trust generally involves primarily a presence of fraud, in view of which equitable title or interest should be recognized in some person other than the taker or holder of the legal title.

210 S.W.2d at 987–88.

In the instant case, the court imposed a constructive trust. Johnston makes no complaint that the evidence is factually or legally insufficient to show unfair conduct or unjust enrichment; however, she does complain that there was no confidential relationship. In her brief, she alleges that the only evidence presented showed a "meretricious" relationship, and concludes "At best, their relationship was restricted to their prior business dealings and perhaps the budoir."

■ In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960). In our opinion, a meretricious relationship and a confidential relationship are not mutually exclusive. Though dispensation of sexual favors alone will not support the imposition of a constructive trust, this may be a factor to be considered, for "The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1963). "[C]onfidential relationships may arise not only from the technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc.—which as a matter of law are relationships of trust and confidence—but may arise informally from 'moral, social, domestic or purely personal' relationships." *Thigpen*, 363 S.W.2d at 253.

The trial court sat as trier of fact and heard the testimony of Mabrey that the property was "deeded to Jacqueline for the purposes that it would be held in trust for us to live in for the rest of our lives...."[2]

■ The evidence is sufficient to support the imposition of a constructive trust. A

---

**2.** In *Mills v. Gray*, we find the following: "The tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confi-dant, for the purpose of raising a constructive trust on a violation or betrayal thereof. 210 S.W.2d at 988.

confidential relationship was established, and the trial court found that the property was not subject to partition in kind.

Having held that the evidence supports the trial court's action in imposing a constructive trust, and that parol evidence was not impermissibly relied upon to do so, we now overrule all of appellant's remaining points of error.

The judgment of the trial court is AFFIRMED.