NO. 07-05-0003-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 15, 2006
_____

FRANCES CAMACHO, RICHARD J. CAMACHO,
VIVIAN C. TREVINO AND DEBORAH ANN CAMACHO, APPELLANTS

V.

CARLOS R. MONTES AND STEPHEN R. GARCIA, APPELLEES
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-519,041; HONORABLE MACKEY K. HANCOCK, JUDGE
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellants Frances Camacho, Richard Camacho, Vivian C. Trevino, and Deborah

Ann Camacho appeal the judgment entered in favor of appellees Carlos R. Montes and

Stephen R. Garcia.  We will affirm.

This is a suit to determine the ownership of the proceeds of a life insurance policy.

Appellant Frances Camacho ("Frances") and others brought suit against Veterans Life

Insurance Company and Gloria Garcia Camacho ("Gloria"), claiming the proceeds of a Veterans policy that insured the life of Delfino Camacho ("Delfino").[1]

Frances purchased the $100,000 term policy on Delfino's life from Veterans in May of 1986, while Frances and Delfino were married.[2] She was named the beneficiary. Delfino and Frances divorced on January 3, 1994. The divorce decree awarded the ownership of all insurance on the life of Delfino to him. Nevertheless, Frances continued to pay the monthly premiums on the policy after the divorce, and she kept the policy in her possession. Premium notices came addressed to Delfino, in care of Frances, at her address. Delfino gave no written instructions to Veterans re-designating Frances as the beneficiary after their divorce.

After Delfino and Frances separated before their divorce, Delfino began living with Gloria. Delfino and Gloria were married on April 12, 2002, and Delfino died three days later after a long illness.[3]

Veterans tendered the proceeds of the policy into the trial court's registry and was dismissed from the case. Gloria moved for summary judgment which, after hearing, the

---

[1] Appellants Richard Camacho, Vivian C. Trevino, and Deborah Ann Camacho, children of Frances and Delfino, were also plaintiffs in the trial court. Alternative to Frances's claim to the proceeds, they asserted claims for the policy proceeds as Delfino's heirs at law.

[2] The record reflects Frances and Delfino were married for 27 years prior to their divorce.

[3] Gloria also died after this lawsuit was filed and her heirs-at-law were substituted in her place. Her heirs-at-law are appellees Carlos R. Montes and Stephen R. Garcia.

trial court granted in part. The trial court held as a matter of law the following: (1) Delfino was the owner of the policy; (2) the divorce divested Frances of any right and title to the policy; (3) there was no action to re-designate her as the beneficiary of the policy; and (4) under the Family Code[4] and the policy,[5] Gloria was the designated beneficiary.

The trial court then conducted a bench trial on the issue of constructive or resulting trust. Frances testified that Delfino told her after their divorce that the policy was hers because she had been paying the premiums. She testified that she continued to make the payments in reliance on his statement. Delfino's son and sister testified that it was only about a year before his death that Delfino found out that Frances had maintained the insurance policy. Gloria testified, through her deposition, that Delfino was "very upset" when he learned of the existence of the policy.

At first, the trial court found that Gloria would be unjustly enriched by payment of the policy proceeds to her, and rendered judgment imposing a constructive trust on the policy proceeds in favor of Frances. On Gloria's motion to modify, correct, or reform the judgment, the trial court withdrew its previous judgment and rendered judgment awarding the policy proceeds to Gloria's heirs-at-law. At the request of Frances, the trial court made

---

[4] Under the Family Code, designation of the insured's former spouse as beneficiary under a life insurance policy in force at the time of divorce is not effective unless (1) the divorce decree designates the former spouse as beneficiary; (2) the insured re-designates the former spouse as beneficiary after divorce; or (3) the former spouse is designated to receive the policy proceeds as trustee for a child or dependent of either of the former spouses. Tex. Fam. Code Ann. § 9.301 (Vernon 2006).

[5] The policy provided for payment of its proceeds to the insured's "widow or widower" if no designated beneficiary survived him.

findings of fact and conclusions of law and then additional findings of fact and conclusions of law.

Appellants raise the single issue on appeal whether Frances was entitled to the proceeds of the policy through the imposition of a constructive trust or a resulting trust. The Fort Worth court of appeals recently noted that "[a]lthough they are often confused, resulting and constructive trusts are distinguishable." *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex.App.–Fort Worth 2004, pet. denied). A constructive trust is an equitable remedy created by courts to prevent unjust enrichment. *Id.* To justify imposition of a constructive trust, the proponent must prove (1) breach of a special trust, or fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Id.* Strict proof of the elements is required. *Id.* (citing *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App.–Corpus Christi 2002, pet. denied)).

A resulting trust is an equitable remedy primarily involving consideration. *Id.* (citing *In re Marriage of Loftis*, 40 S.W.3d 160, 165 (Tex.App.–Texarkana 2001, no pet.)). The doctrine of a resulting trust looks to valuable consideration, not legal title, as the deciding factor on equitable title or interest from a transaction. *Id.* When title to property is taken in the name of someone other than the person who advances the purchase price, a resulting trust is created in favor of the payor. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984). A resulting trust is an "intent trust" employed when trust property had been used for a special purpose which has terminated or become frustrated so that the law implies a trust for the equitable owner of the property. *Tricentrol Oil Trading, Inc. v.*

4

*Annesley*, 809 S.W.2d 218, 220 (Tex. 1991); *see also Harris v. Sentry Title Co., Inc.*, 715 F.2d 941, 946 (5th Cir. 1983), *modified on other grounds*, 727 F.2d 1368 (5th Cir. 1984) ("A resulting trust is an actual, binding trust that can develop where the parties intended a confidential or fiduciary relationship to develop and acted accordingly, but failed to create a valid actual trust agreement.")  A heavy burden is placed on the party attempting to establish the existence of a resulting trust.  *Equitable Trust Co. v. Roland*, 721 S.W.2d 530, 533 (Tex.App.–Corpus Christi 1986, writ ref'd n.r.e.); *Ratliff v. Clift*, 312 S.W.2d 315, 320 (Tex.Civ.App.–Amarillo 1958, writ ref'd n.r.e.).

Both resulting and constructive trusts are implied by operation of law to prevent unjust enrichment.  *Hubbard*, 138 S.W.3d at 486.  Because imposition of either constitutes an equitable remedy, we review the trial court's decision under an abuse of discretion standard.  *See Gerdes v. Kennamer*, 155 S.W.3d 541, 545 (Tex.App.–Corpus Christi 2004, no pet.) (trial court's decisions when sitting as court of equity reviewed under abuse of discretion standard).  A court abuses its discretion if it acts without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).  A trial court's ruling should be reversed only if it was arbitrary or unreasonable.  *Id.* at 242.  Also, because appellants raise no challenge to the trial court's findings of fact, the findings are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

Appellants' brief summarizes their argument, stating, "The evidence clearly establishes that Delfino Camacho engaged in conduct constituting a breach of a confidential relationship between he and Frances Camacho arising out of their long term marriage and friendly, post divorce relationship, the representations of Mr. Camacho which induced Frances Camacho to pay all premiums on the term policy in dispute to maintain it in effect, and the breach of his obligation to take whatever steps were necessary to protect the ownership of the policy and its proceeds in Frances Camacho."

Texas law recognizes that a relationship on which a constructive trust can be based may be a formal fiduciary relationship which arises as a matter of law, such as that between attorney and client, or may be informal, arising from a moral, social, domestic, or purely personal relationship of trust and confidence. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Golden v. McNeal*, 78 S.W.3d 488, 493 (Tex.App.–Houston [14th Dist.] 2002, pet. denied).

The formal fiduciary relationship between Frances and Delfino as husband and wife terminated on their divorce. *In re Marriage of Notash*, 118 S.W.3d 868, 872 (Tex.App.–Texarkana 2003, no pet.). Delfino did not owe a fiduciary duty to Frances based on their marital relationship after 1994. Frances testified that, after their divorce, she and Delfino were "still friends," and that he often called her on the telephone. As noted, Frances also testified that, on several occasions during their telephone conversations, Delfino told her the life insurance policy belonged to her. The trial court found "Delfino Camacho had knowledge, actual or constructive, that the Insurance Policy was being maintained in effect

6

after the divorce of Delfino Camacho and Frances Camacho, as a result of the premium payments being paid by Frances Camacho."

Appellants were required to demonstrate the special relationship of trust and confidence existed prior to, and apart from, the agreement made the basis of the suit. *See Golden*, 78 S.W.3d at 493 (stating the requirements of establishing an informal fiduciary relationship); *see also Thigpen*, 363 S.W.2d at 253 (stating the "existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved"). After reviewing the entire record, we find that neither Delfino's knowledge of the policy nor Frances's statements demonstrate their relationship following the divorce was one of trust and confidence. *Golden*, 78 S.W.3d at 493. The existence of a confidential relationship is a question of fact. *Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992). We cannot agree that the evidence established the existence of a confidential relationship between Frances and Delfino. *Tricentrol Oil Trading*, 809 S.W.2d at 220; *Hubbard*, 138 S.W.3d at 485.

Moreover, neither Delfino's relationship with his former spouse nor his statements to Frances concerning the policy, assuming they were made, permit the implication that he had an "obligation" to cause the policy proceeds to be paid to Frances, and the record is devoid of evidence Delfino expressly undertook such an obligation. The uncertain nature of Delfino's alleged obligation distinguishes this case from such cases as *Mills v. Gray*, 210 S.W.2d 985 (Tex. 1948) and *Leigh v. Weiner*, 679 S.W.2d 46 (Tex.App.–Houston [14th Dist.] 1984, no pet.). The excluded testimony in *Mills* concerned an agreement among family

members that property conveyed to one of them "would be held by [the grantee] in trust for the benefit of his mother and the other children, and that after the [anticipated] divorce he would reconvey it to her, or if sold, he would divide the proceeds among the parties entitled thereto." 210 S.W.2d at 986-87. Similarly, in *Leigh*, the jury found an agreement existed between the spouses concerning the disposition of certain property on the death of the survivor of them. 679 S.W.2d at 47. No evidence of such an express agreement appears here.[6]

Appellants emphasize the unjust enrichment of Gloria brought about by the trial court's ruling. They cite *Pope v. Garrett*, 211 S.W.2d 559 (Tex. 1948) and *Ginther v. Taub*, 675 S.W.2d 724 (Tex. 1984) for the proposition that a constructive trust may be imposed to prevent unjust enrichment of one who would otherwise benefit from the wrongdoing of another.[7] In *Pope*, the jury found that when a will the decedent had requested to be prepared was presented to her, family members physically prevented her from executing it. 211 S.W.2d at 559-60. Because the will was not executed, the decedent died intestate. Shares of the estate were thus inherited by family members who took part in the wrongful conduct and by family members who were not present at the aborted will execution

---

[6] *Mills* and *Leigh* are further distinguishable from this case by the family relationships among the parties to the purported agreement in *Mills*, 210 S.W.2d at 986, and the husband-wife relationship in *Leigh*, 679 S.W.2d at 47.

[7] There is no contention that Gloria can be viewed as a wrongdoer. Appellants do not challenge the trial court's finding that "Gloria Garcia Camacho committed no fraud, duress or other wrong doing for the purpose of making her the beneficiary of the policy." Gloria testified she did not know that marrying Delfino would bring her any financial advantage, and there is no evidence to the contrary. The second element required for imposition of a constructive trust, that of unjust enrichment of the wrongdoer, is not met in this case. *See Hubbard*, 138 S.W.3d at 485.

8

ceremony. The supreme court held that imposition of a constructive trust was appropriate with respect to the shares inherited by the innocent heirs at law, as well as to those inherited by the wrongdoers. *Id.* at 562. Here, the trial court did not find that Delfino breached a duty to Frances or otherwise committed any wrongful act. The absence of evidence of wrongdoing by Delfino distinguishes the case at bar from *Pope*. Similarly, *Ginther v. Taub* involved fraud committed by a lawyer in breach of his fiduciary duty to his client. 675 S.W.2d at 727. Neither case provides a basis to establish the trial court abused its discretion by refusing to impose a constructive trust here.

Finally, and particularly with respect to appellants' argument for imposition of a resulting trust, appellants note the case law holding that one of the elements for the imposition of a resulting trust is payment of the consideration must have occurred at the time of purchase of the property in question. *See Sahagun v. Ibarra*, 90 S.W.3d 860, 863-64 (Tex.App.–San Antonio 2002, no pet.) (stating rule). Appellants argue that because the policy on Delfino's life was a term policy maintained in effect only by the timely payment of monthly premiums, ownership of the policy and its proceeds was purchased each month as Frances paid the premium. The evidence did not compel the trial court to adopt that view. Although the policy was a term policy and presumably had no cash value, it was undisputed the policy was purchased in 1986 and ownership of it was awarded to Delfino by the 1994 divorce decree. We decline to hold that the trial court abused its discretion by failing to impose a resulting trust on the policy or its proceeds based on Frances's later payment of premiums.

9

Accordingly, we overrule appellants' issue and affirm the judgment of the trial court.


James T. Campbell
Justice