**H. R. GIBSON, Sr., Appellant,**

v.

**NORTHEAST NATIONAL BANK,**
**Appellee.**

**No. 18282.**

Court of Civil Appeals of Texas,
Fort Worth.

June 17, 1980.

Rehearing Denied July 24, 1980.

Joseph A. Pitner, Bardwell D. Odum, Dallas, for appellant.

King & Massey, Inc. and Marion L. Massey, Fort Worth, for appellee.

### OPINION

HUGHES, Justice.

H. R. Gibson, Sr. was sued by the Northeast National Bank of Fort Worth on two notes executed by William M. Mapston totaling $75,000.00. The notes were executed by Mapston as part of a joint venture which the bank claimed existed between Gibson and Mapston for the purpose of conducting a "floating trade show". Gibson agreed to conduct the trade show and Mapston, the operator of a travel agency, agreed to arrange for a cruise during which the trade show was to be held. After the cruise was not successful and Mapston had defaulted on the notes, the bank brought suit against Gibson, Mapston, and M & M Travel, Inc., a travel agency operated by Mapston and his wife. A joint and several judgment against Gibson and Mapston was rendered after a trial to a jury, from which only Gibson has appealed.

We affirm.

Gibson, who had conducted trade shows in Market Hall of Dallas for a number of years, was approached by Mapston, president of M & M Travel, with the idea of holding a trade show which would be held during a Caribbean cruise. Travel arrangements were to be handled by Mapston, and the details of the trade show were to be handled by Gibson. Mapston and Gibson agreed that if ticket sales for the cruise exceeded a certain number, Mapston would pay Gibson a commission on the cruise ticket sales.

In order to reserve the use of a suitable ship for the cruise, Mapston arranged for the bank to issue an irrevocable letter of credit in the amount of $75,000.00 to a steamship company in Florida. Gibson personally guaranteed this letter of credit on which the steamship company drew. Before the cruise began, Mapston signed two promissory notes payable to Northeast National Bank totaling $75,000.00. Also, Gibson spent in excess of $80,000.00 of his personal funds for advertising and promoting the floating trade show.

The cruise was not successful. Mapston defaulted on the two notes. Northeast National Bank sued Mapston as maker of the notes and Gibson on the ground that his guaranty of the letter of credit also operated as a guaranty for the two notes. In the alternative, the bank sought recovery from Mapston and Gibson on the ground that a joint venture existed between them to operate the floating trade show.

In response to a special issue, the jury found that a joint venture existed between Mapston, M & M Travel and Gibson. Based on this finding, the court rendered judgment jointly and severally against Mapston, M & M Travel and Gibson for $86,991.41, representing principal and interest on the notes, plus attorneys fees as provided for in the two notes, and court costs. Only Gibson has appealed.

Gibson has raised numerous points of error which can be reduced to allegations of (1) error in the submission of an issue on joint venture to the jury, (2) insufficiency of the evidence to support the jury finding that a joint venture existed, (3) jury misconduct, (4) error in failing to admit certain testimony, and (5) fundamental error in failing to join Mapston's wife as an indispensable party. With regard to whether a joint venture existed, we hold that the evidence raised such an issue, that Gibson made no proper objection to the submission of this issue to the jury, and that the jury finding that a joint venture existed is supported by sufficient evidence. We further

hold that the trial court did not err in overruling Gibson's motion for new trial on the ground of jury misconduct or in failing to admit the excluded evidence complained of, nor was fundamental error committed in failing to join Mapston's wife.

■ Special issue number one read:

"Was the 'Caribbean Trade Show Cruise' a joint venture between M. & M. Travel, Inc., and H. R. Gibson, Sr.?

"You are instructed that a joint venture between two or more people means an agreement, either express or implied, involving a joint or community interest, to share profits, if any, and losses, if any, and to mutually control or manage the 'Caribbean Trade Show Cruise'.

"Answer, 'It was' or 'It was not'.

"ANSWER: *It was*".

A joint adventure has been described as a special combination of persons in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual benefit or profit. *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307, 310–11 (1935). In light of this description, the trial court's definition was not in error.

■ It would follow that if the evidence introduced raised the possibility of (1) an express or implied agreement to share any profits and losses, and (2) mutual control of the cruise, special issue no. 1 was properly submitted to the jury. After reviewing the record, we find there is evidence showing that Mapston, acting personally or in his capacity as president of M & M Travel, and Gibson entered into an agreement to share profits as shown by the arrangement they made concerning the commission on ticket sales. In addition, there was also evidence showing that there was mutual control or management of the cruise. Mapston was to use his travel agency to make the arrangements for the ship, and Gibson was to attend to the particulars of the trade show during the cruise. Since under the circumstances of this case the cruise could not exist without the trade show, and vice versa, it would appear that the evidence raised the issue of whether there was joint or mutual management since each party to the

purported joint venture had control over a critical and necessary part of that venture.

■ Since the evidence raised both elements of a joint venture, there was no harm to submit this issue to the jury, unless Gibson protected himself by making a timely and proper objection to the court's charge. Without such objection, Gibson waived any complaint. Tex.R.Civ.P. 274. Gibson raised a number of objections but we hold as to all that the trial court did not err in overruling them or that the objections were not properly raised. Gibson's objections were essentially that the question of joint venture was a question of law and not a question of fact, and that the definition of joint venture which the trial court used was incorrect. Gibson argues that elements of a joint venture include the intent of the parties to create a joint venture and whether the debt sued upon was an obligation of the joint venture.

■ With respect to his first contention, we note that Gibson did not complain to the trial court that the special issue addressed a question of law instead of a question of fact. Gibson timely raised nine specific "objections and exceptions to the courts charge", but nowhere in these do we find any complaint that the court was improperly submitting a question of law to the jury. For this reason alone, the complaint would be waived. However, given the existence of certain fact elements critical to its establishment, it would follow that the existence of a joint venture would be necessarily included in the jury's finding, since the jury would have to find the existence of two elements of a joint venture, both factual determinations, in order to find its existence.

■ As to intent, Gibson contends that this is almost an ultimate issue to be decided in determining whether a joint venture exists, and if nothing else, it is an element of a joint venture. We disagree. Intent is not a factual issue, but is necessarily included in the definition of joint venture, as was submitted to the jury in connection with special issue no. 1. Any intent which the

jury must find is included in the determination of whether the specific elements of joint venture are present. An agreement to share profits and losses and joint or mutual management of a venture each requires specific intent. The jury finding that these elements were present will necessarily be found based on the court's definition of joint venture. No more than this is necessary, and the trial court did not err by failing to go further and require the jury to make a specific finding of intent to create a joint venture. When the jury found that the joint venture existed, they had already found that the necessary intent was present.

■ The definition of joint venture does not require a finding that particular debt sued upon be an obligation of the joint venture. It was not error for the trial court to exclude this as an element in its definition. A joint venture is a "special combination of persons in the nature of a partnership", and since it has the attributes of a partnership, the law of partnership applies in so far as Gibson and Mapston had a mutual agency between themselves. "Courts do not treat a joint venture as identical with a partnership, yet it is universally held that such relation is so similar in its nature to a partnership and in the contractual relation created thereby that the rights as to the members are governed by substantially the same rules that govern partnerships." *Lane v. Phillips*, 509 S.W.2d 894, 897 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). Given this mutual agency, it was not necessary to show that the debt which the bank sued upon was a debt of the joint venture. It was sufficient to show that one of the two joint venturers had signed such a note. The other joint venturer would be bound thereby, provided the debt was for the use of the joint venture.

■ For the reasons stated above, there was no error in submitting special issue no. 1 to the jury. The jury's finding in re-

sponse to this issue is binding unless supported by insufficient evidence, as Gibson argues. We find that there is sufficient evidence to show that each of the two elements of the joint venture existed. As noted, there was evidence of an implied agreement to share profits and losses. Upon carefully reviewing the record we find that this evidence is sufficient to support the jury finding. There was also evidence of joint management or control, and likewise, after carefully reviewing the record, this evidence is also sufficient to support the jury's finding. Since the debt created by Mapston was for the use of the joint venture, such debt became an obligation of the joint venture for purposes of making Gibson liable on the note. Therefore, the trial court was correct in holding Gibson liable on the notes by virtue of his participation in the joint venture.

■ In addition to the central issue of joint venture, Gibson also raises three other areas of complaint. The first concerns jury misconduct. This was alleged to have occurred as the result of the jury becoming confused by the usage of "joint" in the commission agreement between Gibson and Mapston. As a result, the jury sent a note to the trial judge during its deliberations. The jury asked whether it was necessary for them to find that a joint venture had to include an agreement covering *both* profits and losses. The trial judge replied that he could not give further instructions or definitions, and that the jury should answer the questions from the evidence. Eventually, the jury came to a unanimous conclusion.

The trial judge did not err in failing to give further instructions or definitions to the jury, nor did this occasion jury misconduct. The definition of joint venture stated that a joint venture meant an agreement between two or more people to share "profits, if any, and losses, if any". This had the effect of answering the question posed by the jury, and after they reviewed the remainder of the evidence, they did not commit any misconduct if they concluded that

the joint venture had to include both profits and losses, in light of the wording of the definition in the court's charge.

 Gibson also complains of the exclusion, over his objection, of evidence of certain communications between the president of the bank and Mapston. This concerned the removal of certain documents from Mapston's loan file and a suggestion by its president that Mapston should testify for the bank. We fail to see how this evidence was relevant, nor how its exclusion was error. The proffered testimony was of a highly prejudicial nature, and being irrelevant, it was properly excluded.

 Finally, Gibson complains of fundamental error regarding joinder of Mapston's wife as a party to this suit. We do not see how Gibson would have standing to bring this point before us. Mrs. Mapston was named in the suit as a defendant because the bank sought to partially satisfy its judgment by execution against the Mapston's house, which the bank claimed they had abandoned as their homestead. Since the Mapstons did not appeal, and since Gibson was held jointly and severally liable, we fail to see how any problems relating to Mrs. Mapston's joinder could possibly affect him.

· We have carefully considered each point of error raised by Gibson, and although each point is not specifically addressed, each point has been separately considered and is overruled. The judgment of the trial court is affirmed.