Tom Bankhead, Bankhead & Davis, Carthage, for appellants.

Otis W. Carroll and Donald Carroll, Ireland, Carroll & Kelley, P.C., Tyler, for appellees.

**Richard C. EGLIN, et al, Appellants,**

v.

**Milton Welsh SCHOBER, et al, Appellees.**

**No. 09–87–179 CV.**

Court of Appeals of Texas, Beaumont.

Oct. 13, 1988.

Rehearing Denied Nov. 2, 1988.

OPINION

BROOKSHIRE, Justice.

This legal proceeding had its genesis in an interpleader suit brought by Woolf & Magee, Inc. This corporation holds an oil, gas and mineral lease from all parties to this appeal. These parties are asserting conflicting claims to certain royalty interest and mineral interest in certain lands in Angelina County. The lands are located in the Lucas Munas Survey A–427, Angelina County. Briefly stated, the protagonists

and adversaries here are the Appellants who hold and claim title under R.B. Eglin and the Appellees, who are the heirs of, and have inherited from, P.M. Welsh.

The Appellants sought, by their pleadings, a declaratory judgment, that the interests in dispute belonged to them because of a constructive trust arising out of a joint venture agreement, originally between J.H. Jordan, P.M. Welsh and R.B. Eglin, in the acquisition of the lands and tracts involved. The Appellees have denied the theory of constructive trust.

The Appellees additionally denied the joint venture, asserting that the written memorial of the joint venture agreement was a forgery, asserting, as well, that the Appellants' claim was a stale demand.

The paramount issue in the trial court below and in the appeal here, we perceive, is the Appellees' contention that no constructive trust could exist because there was no fiduciary relationship that existed between R.B. Eglin and P.M. Welsh, which said fiduciary relationship, Appellees assert, had to exist before and it had to exist separate, apart and entirely distinct from the joint venture made the basis of this litigation.

A jury tried the case as the finders of fact. The jury found that there existed a joint venture between J.H. Jordan, P.M. Welsh and R.B. Eglin in acquiring the lands in question in 1912. Next, the jury found that the interest of R.B. Eglin, in the joint venture, was a ¼th interest. The jury found, in the third special issue or question, that P.M. Welsh signed the 1917 document, which was a written instrument. It read:

"F.G. Thatcher    Law Office    Notary in Office
"P.M. Welsh                of

"THATCHER & WELSH

—————

"Commercial National Bank Bldg.
"Rooms 803–4–5
"Shreveport, La.

"Shreveport, La., March 13th., 1917.

"This certifies that R.B. Eglin has an undivided one-fourth (¼) interest in and to the tracts of land now standing in the name of J.H. Jordan and P.M. Welsh, containing 3170–4/1o [sic] Acres, situated in Angelina County, Texas. This one fourth undivided interest, it is mutually agreed, belongs to R.B. Eglin in remuneration for his services and expenses in acquiring said lands in the year 1912. From this date the said R.B. Eglin is to contribute his one-fourth toward the taxes and other expenses in caring for this property. His one-fourth interest to be paid him when said property is sold, less his indebtedness to us as evidenced by his notes of this date.

                J.H. Jordan
                P.M. Welsh        "

The Appellees had taken the position that their predecessor in title, P.M. Welsh, had not signed the document and that P.M. Welsh's signature thereon was a forgery. The jury found to the contrary.

In response to Special Issue No. 4, the jury failed to find that a fiduciary relationship existed between R.B. Eglin and P.M. Welsh before the Angelina County land acquisitions in 1912 and the jury failed to find that a fiduciary relationship existed between Eglin and Welsh that was separate and apart from the Angelina County land acquisitions. All the protagonists moved for judgment. The judgment entered was in favor of the Welsh heirs, Appellees here.

On appeal, the Appellants basically claim two errors committed by the District Judge. The first was that the trial court erred in refusing to grant judgment imposing, by that judgment, a constructive trust in favor of the Appellants after the jury had found, upon ample evidence of probative force, that the lands in question were acquired under a joint venture agreement, awarding the Appellants' predecessor in title the one-fourth interest in question. Secondly, the Appellants contend that they should have recovered a reasonable attorneys' fees because their pleadings and prayer sought a declaratory judgment. The reasonableness, necessity and the amount of the attorneys' fees for Appellants had been stipulated by the parties at trial.

The record reflects and the Appellants contend that, in 1912, Jordan, Welsh and

Eglin entered into a joint venture agreement to acquire 3,170.4 acres of land in Angelina County. One of the joint venturers was J.H. Jordan, a banker and real estate developer who, from time to time, invested in lands and minerals in Texas. A major part of J.H. Jordan's business life was the development of real estate. He was a clothing store merchant and then, later, he went into a bank as an employee-banker. Jordan was associated with the First National Bank and also the Continental American Bank. He became, at one time, the Executive Vice-President and, later, the President of the Continental American Bank, in Shreveport, Louisiana. The record reflects that, in these Texas investments, he always had good friends who were partners of his in these real estate and mineral acquisitions in Texas.

Mr. P.M. Welsh was a friend of J.H. Jordan. Mr. Welsh was an attorney. The third man involved was R.B. Eglin, who was in the lumber business as well as the land business. The daughter of J.H. Jordan testified, concerning many pertinent and relevant facts. The Jordan heirs quitclaimed all of their interests, their rights, and titles to the mineral and royalty interest in dispute to the Appellants.

In March, 1917, a certificate was written that R.B. Eglin had an undivided one-fourth (¼) interest in and to the tracts of land that were standing in the names of J.H. Jordan and P.M. Welsh. These tracts contained 3,170.4 acres, situated in Angelina County, as set out in the document. This document in writing further certified that this ¼th interest, it was mutually agreed, belonged to R.B. Eglin in remuneration for his services and his expenses in acquiring the said lands in the year 1912. The signature of J.H. Jordan was definitely and unequivocally identified by his own daughter as being the true signature of her father. P.M. Welsh was definitely identified as a friend of J.H. Jordan.

Eglin was in the timber business, including the manufacture of staves for export to France. This activity was before World War I. He lived to be 97.

Later, in 1919, the surface of the land involved was sold. However, the minerals, including all oil and gas under certain tracts, being designated as the fourth tract and the fifth tract, were reserved and excepted from the conveyance of the surface of the land. In 1941, R.B. Eglin filed for record his sworn affidavit and quitclaim, whereby he asserted and reserved and saved and excepted his ¼th ownership in the reserved minerals, being R.B. Eglin's undivided ¼th interest in and to all of the oil, gas and other minerals in and under, or that may be produced from, the fourth and fifth tracts of land, being 728 acres and 112 acres of land, respectively. These two tracts were described in detail in a deed from J.A. Massingill and W.H. Bonner, to J.H. Jordan and P.M. Welsh, which said deed was recorded in Volume 31, at pages 483, 484 and 485 of the Deed Records of Angelina County, Texas.

The Appellants, in trial court action, properly and timely filed their motion to disregard the jury's findings to Special Issue No. 4, wherein the jury had failed to find that a fiduciary relationship existed between Eglin and Welsh before the Angelina County land acquisitions in 1912 and wherein the jury failed to find that there was a fiduciary relationship which was separate and apart from the Angelina County acquisitions. The learned and scholarly trial court, however, denied the Appellants' motion and rendered a judgment for the Appellees. We respectfully disagree with the District Court. We reverse and render the judgment, in part. We deem it necessary to recite the Special Issues and the answers thereto.

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that there existed a Joint Venture between J.H. Jordan, P[.] M. Welsh and R.B. Eglin in acquiring the land in question in 1912?

"You are instructed that a joint venture between two or more people means an agreement either expressed or implied

involving a joint or community interest, to share profits, if any, and losses, if any, and to mutually control or manage the property.

"Answer 'Yes' or 'No'

"Answer <u>Yes</u>

"If you have answered the foregoing Special Issue 'Yes' then you will answer the following Special Issue; otherwise, you need not answer same.

## "SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the interest of R.B. Eglin in the Joint Venture was one-fourth (¼)?

"Answer 'Yes' or 'No'

"Answer <u>Yes</u>

## "SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that P.M. Welsh signed the 1917 document?

"Answer 'He did sign the 1917 document' or 'He did not sign the 1917 document'.

"ANSWER: <u>He did sign the 1917 document.</u>

## "SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence, that a fiduciary relationship existed between R.B. Eglin and P.M. Welsh:

"a. before the Angelina County land acquisition venture in 1912?

"Answer 'Yes' or 'No'.

"Answer: <u>No</u>

"b. separate and apart from the Angelina County land acquisition venture?

"Answer 'Yes' or 'No'.

"Answer: <u>No</u>

"By the term 'fiduciary relationship' as that term is used in this issue is meant something more than mere friendly rela-

tions or confidence in another's honesty and integrity. It applies to a person who occupies a position of peculiar confidence toward another. There must be something in the particular circumstances which approximates a business agency, professional relationship, or a family tie, something which itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise."

## "SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the Plaintiffs and their predecessor in interest, R.B. Eglin, unreasonably delayed asserting the claim for the mineral interest in question to the detriment of the record owners of the mineral interest?

"Answer 'We do' or 'We do not'.

"ANSWER: <u>We do not.</u>"

Actually, this is the second trial of this litigation. The first trial was a Bench trial, in which the trial judge found for the Appellants on the basis of a constructive trust. However, on appeal, our Ninth Court reversed and remanded because the Appellants had simply failed to plead a constructive trust theory. That opinion was unpublished.

On the second trial, the verdict of the jury established, as shown above, a joint venture agreement between the parties whereby the Appellants' predecessor in title was the owner of an undivided ¼th interest in the lands in question. We think it is conceded that the courts will undoubtedly determine that fiduciary relationships exist, as a matter of law, in certain situations such as the attorney-client relationship, the trustee-beneficiary relationship, as well as the relationship that exists between general partners. We have held that a joint venture is very similar to a partnership and should be governed by the same basic rules. *Austin v. Truly*, 721 S.W.2d 913 (Tex.App.—Beaumont 1986) aff'd 744 S.W.2d 934 (Tex.1988).

Both briefs cite *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960). In the *Omohundro* case, a royalty interest was taken and retained in the name of E.G. Omohundro. In the *Omohundro* case, Frank D. Matthews, Jr., and Ray James Thompson, Jr., brought suit against E.G. Omohundro to recover an undivided ⅓rd interest each in a 1/16th overriding royalty interest which Omohundro had acquired through Slick Oil Corporation. Previously, Omohundro had acquired knowledge of the opportunity of acquiring an assignment, or what was commonly called a "farmout", from Humble Oil and Refining Company of certain oil and gas leases in Jasper County in return for the promise to obtain certain drilling operations. The "farmout" was formalized by letter in May, 1955. It should be borne in mind that this "farmout", in the first instance, was from Humble Oil. Omohundro had contacted Matthews and Thompson, in April, 1955, to inquire whether they thought the area involved was sufficiently good as a prospect to merit Omohundro's efforts. Matthews and Thompson were geologists. These geologists made an investigation of certain data available to them. They decided that the area was a good prospect and had adequate promise. There was testimony, in *Omohundro, supra,* case, that the three men then orally agreed to use their efforts to obtain the exploration and development of the leases and then to divide, apparently equally, and in ⅓rd portions, the profits.

Humble Oil, at the request of Omohundro, by letter, in May of 1955, agreed to assign the oil and gas leases in the prospective area directly to Omohundro. One of the several leases was known as the N.B. Hughes lease. It was upon this Hughes lease that the principal operations were conducted. The three individuals began locating a person or firm who would actually conduct the drilling operations or who would finance the drilling of a well. A Mr. Frank Sharp was such a person and Thompson introduced Frank Sharp to Omohundro. Sharp agreed to drill a well on the Hughes lease and that lease was tentatively assigned to Frank Sharp. The assignment provided for an overriding royalty of 1/16th reserved in Omohundro's name. Then, in the next month, in June of 1955, Omohundro acknowledged, in a letter, the interest of Frank Matthews and Ray Thompson. The letter read:

" 'Dear Ray, This letter is written evidence of the fact that you and Frank each own one third interest, and that I own a remaining third interest in the overriding royalty that is reserved to me under the terms of my letter to Frank W. Sharp under date of June 10, 1955. This letter and agreement thereunder were made under the terms of letter agreement of Humble letter to me under date of May 13, 1955. At the proper time, I will make the necessary assignments to each of you upon your request.' " [341 S.W.2d at 402]

The Sharp well, which had been denominated the "Omohundro–Hughes No. 1" well proved to be dry and unproductive. It was abandoned in July of 1955. Thereafter, Omohundro, Thompson and Matthews attempted to contact other drillers and investors to explore the prospects and prospective area for petroleum. Matthews persuaded a driller, named J.P. Owen, to drill a well at Owen's own expense. In addition, Owen agreed to pay $5,000 for the assignment of the leases. Owen agreed to allow a reservation of a 1/16th overriding royalty in Omohundro's name. This was agreeable to Omohundro. The $5,000 was paid. Omohundro's expenses were reimbursed to him and apparently there was an agreement to divide the balance of the $5,000 in three equal portions. Then, in December, 1955, Omohundro executed a written assignment to Matthews and Thompson of a ⅓rd interest each in the overriding royalty and Omohundro acknowledged that, as to the Owen well, the overriding royalty and reversionary interest were owned equally by the three of them. At this point in time, it was claimed by Omohundro that he ended his association with Matthews and Thompson. The jury found otherwise.

On this point, the case before us is much stronger in favor of the Appellants because

the Appellees do not make any contention of any termination of the joint venture that the jury has found existed between Jordan, Welsh and Eglin.

Owen's well was non-productive. It was abandoned the last week in December of 1955. Because the Sharp well and Owen well were both dry and unproductive, interest in that area declined dramatically. Humble's leases, in this part of the "farmout" area, were allowed to lapse. This was done with Omohundro's consent. The Hughes lease was due to expire on March 24, 1956. However, earlier in the same month of March, 1956, and prior to the expiration of Humble's lease on the Hughes tract, Omohundro and the Slick Oil Corporation agreed that Omohundro would obtain leases in the same area for Slick. In return for his efforts, an overriding ¹⁄₁₆th royalty would be received by Omohundro. Slick decided to use some of its own landmen to obtain the new leases but Omohundro agreed to assist them.

Very shortly after Humble's lease had expired on the Hughes tract, Slick Oil Corporation secured a lease on the Hughes tract and on other tracts which had been covered and described in the original "farmout" from Humble to Omohundro.

In June of 1956, Slick transferred the agreed to ¹⁄₁₆th overriding interest in these tracts to Omohundro and to him solely. Basically, Matthews and Thompson claimed, in their suit, that they were each entitled to a ⅓rd interest in the overriding ¹⁄₁₆th royalty acquired by Omohundro from Slick.

Then, the Supreme Court of Texas, in an opinion written by Justice Greenhill, asked itself this question:

"So the question arises whether a constructive trust may be imposed to prevent unjust enrichment of one in a confidential relationship even though such person refuses to perform an unenforceable express trust? Taking the case one step further, is it the intention of the Trust Act to prohibit the courts from declaring Omohundro a constructive trustee when, had the parties not so

agreed, Omohundro would have been declared to be a constructive trustee? ... The courts, so doing, will not be enforcing an oral contract but will be enforcing a constructive trust based upon the violation of a fiduciary duty and to prevent unjust enrichment." [341 S.W.2d at 404]

The way we interpret the Supreme Court's opinion, in *Omohundro, supra,* is that a constructive trust can be based on the proposition that unjust enrichment should be prevented or upon a violation of a fiduciary duty. We quote further from *Omohundro, supra:*

"A constructive trust does not, like an express trust, arise because of a manifestation of intention to create it. It is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. It is used, among other things, to adjust rights of partners. The same basic rules, in situations such as we have here, apply to joint venturers." [341 S.W.2d at 405]

It must be remembered and stressed by us, at this point, that the jury in this case, in two, separate, distinct special issues found a joint venture between Jordan, Welsh and Eglin. We think, on this ground, that the Appellants' case before us is actually stronger than the case of Matthews and Thompson, who prevailed over Omohundro. Omohundro was the loser in the Supreme Court.

Then, the Court discussed the case of *Mills v. Gray,* 147 Tex. 33, 210 S.W.2d 985 (1948). In discussing the *Mills* case, Justice Greenhill wrote, 341 S.W.2d at page 407:

"The following from Sec. 194, Comment d., of the Restatement of Restitution is particularly pertinent:

"'Where one person orally undertakes to purchase land on behalf of another, it may be urged that the other cannot enforce a constructive trust because the undertaking is oral and there is no compliance with the provisions of the Statute of Frauds. *The answer to*

*this objection is that the other is not enforcing an oral contract, but is enforcing a constructive trust based upon the violation of fiduciary duty.*

" ' * * *

" 'The rule stated in this Section is applicable where one person agrees to purchase property on behalf of another, whether he undertakes to purchase it in the name of the other, or in his own name, or in their joint names.'

. . . .

"Constructive trusts have been held to apply where there have been oral promises, or in spite of oral promises, in a number of related situations. Perhaps the most conspicuous of such cases are those dealing with partnership property." (Emphasis added)

We have held that a joint venture is very closely akin to a partnership and the same basic rules concerning partnership property mutually and reciprocally apply to joint venture property. *Austin v. Truly,* 721 S.W.2d 913 (Tex.App.—Beaumont 1986), *aff'd* 744 S.W.2d 934 (Tex.1988).

Then, Justice Greenhill quoted, in *Omohundro,* with approval, from the case of *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W. 2d 256 (1951), as follows, 341 S.W.2d at page 408:

"In the Fitz–Gerald case, the joint adventurers were dealing in oil and gas leases. In violation of his fiduciary duty, one of the members appropriated to himself an oil and gas lease to the exclusion of his associates ... In affixing a constructive trust, this Court held:

" 'This trust arose not because there was any agreement for the title to be taken in the name of petitioner, and the property to be held by him in trust for the respondents—as would be necessary to constitute an express trust— *but, because under the facts, equity would raise the trust to protect the rights of the respondents, and to prevent the unjust enrichment of petitioner by his violation of his promise and duty to the respondents to take*

*title in the name of the three of them, and for their mutual profit and advantage.'* (Emphasis added.) 237 S.W.2d at page 259."

We stress that the Fitz–Gerald case was a joint venture case and the Supreme Court held that a fiduciary relationship and a fiduciary duty existed between the joint venturers. We conclude that the Appellants' case before us is even stronger and more compelling than the *Fitz–Gerald, supra,* case because of the two separate jury findings in the case subjudice of a joint venture, plus the jury's finding that P.M. Welsh signed the 1917 document. Because of these same three jury findings, we conclude that the Appellants' case is more compelling than were the claims of Matthews and Thompson.

Justice Greenhill continues, in *Omohundro, supra,* 341 S.W.2d at page 409:

"So here, the Court is not enforcing the parol agreement. It is enforcing a constructive trust arising by operation of law to prevent unjust enrichment obtained through the violation of a fiduciary relationship...."

In our case, the fiduciary relationship necessarily arose because of the joint venture. But Justice Greenhill writes further, in *Omohundro, supra,* 341 S.W.2d at page 409:

"In the cases of Omohundro and Fitz–Gerald, the parties were joint adventurers and both were in a confidential relationship. The duty in each instance is that the property be acquired for mutual profit and advantage. In both instances, the one would be unjustly enriched by his own wrongful act. As stated above, 'This rule stated in this Section is applicable where one person agrees to purchase property on behalf of another, whether he undertakes to purchase it in the name of the other, or in his own name, or in their joint names.' Restatement of Trusts Sec. 194."

We do not read *Omohundro* as requiring a prior, separate fiduciary relationship. No prior, separate fiduciary relationship exist-

ed in *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948).

Furthermore, in the court's quotes from the Restatement of Restitution and the Restatement of Trusts, no prior or separate fiduciary relationship is made a prerequisite to raising, declaring and enforcing a constructive trust on the property in dispute.

We have grappled with certain language in *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333, 336–337 (Tex. 1966), such as:

> "This Court has written several opinions on constructive trusts since the enactment of the Texas Trust Act, and it would serve no useful purpose to repeat the standards prescribed in those opinions for the creation or existence of a fiduciary relationship and a constructive trust....
>
> "The fact that people have had prior dealings with each other and that one party subjectively trusts the other does not establish a confidential relationship....
>
> "Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless.
>
> "The usual cases of fiduciary relationship have been attorney-and-client, partners, close family relationships such as that of parent-and-child, and joint adventurers, particularly when there is an agreement among the joint adventurers to share financial gains and losses...."

Appellees place major reliance on *Consolidated Gas & Equipment Company, supra*.

The jury findings are set out in the opinion in *Consolidated Gas & Equipment Co., supra*. It is significant and of crucial importance that the jury did not find a joint venture between D.A. Griffith, C.A. Griffith and either L.B. Newman, President, or H.M. Thompson, employee. We conclude that this distinguishes the *Consolidated Gas & Equipment Co., supra*, case from the case before us.

We conclude that this distinction between *Consolidated Gas & Equipment Co., supra*, and the case subjudice is valid and sound, both on the facts and on the Supreme Court's opinion. In *Consolidated Gas & Equipment Co., supra*, plaintiffs, D.A. Griffith and his father, C.A. Griffith, never possessed any written memorial, or instrument, signed by L.B. Newman, who was the president of the defendant corporation and with whom the plaintiffs, D.A. Griffith and C.A. Griffith, dealt. The Griffiths claimed that Newman would award to them a $\frac{1}{16}$th overriding royalty out of the $\frac{7}{8}$ths of the oil and gas produced from a certain tract of land if the Griffiths obtained a lease on that tract. Neither of the Griffiths obtained the lease that was made the basis of the suit. The lease was obtained by another individual, H.M. Thompson, who actually worked as an employee for the defendant corporation. L.B. Newman had signed nothing, either individually or as president of the defendant corporation. He died before the trial. He was unavailable as a witness. We think, in the *Consolidated Gas & Equipment Co., surpa*, case, the Supreme Court recognized the usual cases wherein a fiduciary relationship necessarily results. The opinion states that fiduciary relationships necessarily exist between, inter alia, partners and joint adventurers. In *Consolidated Gas & Equipment Co., supra*, the court approved and reaffirmed its holding in *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962). In *Thigpen, supra*, the court wrote:

> "In the cases of *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, and *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, this court recognized that confidential relationships may arise not only from the technical fiduciary relationships such as

attorney-client, trustee-cestui que trust, partner and partner, etc.—*which as a matter of law are relationships of trust and confidence*—but may arise informally from 'moral, social, domestic or purely personal' relationships, 54 Am.Jur. 173, Sec. 225, 'Trusts'. (Quoted in *Fitz–Gerald v. Hull, supra.*). The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." (Emphasis added)

It is of special significance that the Supreme Court, in *Thigpen, supra,* held that technical and binding fiduciary relationships arise between partner and partner; hence, between joint venturers.

In *Gibson v. Northeast Nat. Bank,* 602 S.W.2d 337 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.), a unanimous court wrote, at page 340:

"A joint adventure has been described as a special combination of persons in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual benefit or profit. *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307, 310–11 (1935)...."

The Fort Worth court, in *Gibson, supra,* further held that a joint adventure is a special combination of persons in the nature of a partnership. Hence, the fiduciary relationship arises from the joint venture or partnership, itself.

In *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962), the court wrote that the really important circumstance from which the law will raise a constructive trust is the breach of a confidential relationship and that a partnership or joint venture is such a confidential relationship. We deem the reasoning and rationale set forth in *Gaines, supra,* is strongly in favor of the Appellants.

*TEX.CIV.PRAC. & REM.CODE ANN. Sec. 37.009* (Vernon 1986), under "Declaratory Judgments", provides as follows:

"In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."

In view of *TEX.CIV.PRAC. & REM. CODE ANN. Sec. 37.010* (Vernon 1986), we remand the question of Appellants' attorneys' fees to the District Court and the presiding judge thereof who has, twice, tried this litigation. We think he is in a superior position to initially decide this question. We note, of course, that *Sec. 37.009* uses the phrase "the court may award costs and ... attorney's fees". The mandatory verb "shall" is not used.

We reverse the judgment of the trial court in favor of the Appellees and we render it in favor of the Appellants on the mineral and royalty interests. We remand the cause for the administrative entry of the proper judgment by the district court consistent with this opinion on the mineral and royalty interests in question. We remand the issue of Appellants' attorney's fees.

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.